PACIFIC LIVE STOCK COMPANY *v.* LEWIS, ET AL., CONSTITUTING THE STATE WATER BOARD OF THE STATE OF OREGON.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 300.  Argued March 16, 1916.—Decided June 5, 1916.

Nothing is accomplished by an unsuccessful attempt to remove an administrative proceeding into the Federal court where the District Court has by its remanding order adjudged that the removal is not authorized.

Under § 28, Judicial Code, the order of the District Court remanding a proceeding to the state court is final and conclusive; it is not subject to review either directly or indirectly.

The rule of retention of a cause by the first of two courts of concurrent jurisdiction to the exclusion of other courts and the protection of its

jurisdiction by injunction, applies only where there is substantial identity in the rights asserted and purposes sought in the several suits; the rule does not apply where the earlier suit is a mere private effort to restrain encroachments on plaintiff's individual rights and the later suit is a *quasi*-public proceeding set in motion by a public agency to determine the rights of all parties in interest.

Where the decision by the state court, that a statutory proceeding before a state board is preliminary and administrative and not judicial, is the necessary result of that court's construction of the statute, this court accepts it as correct.

A State may, without violating due process of law, require all claimants to the same water to submit their claims to an administrative board and to pay a reasonable fee for the expenses of such board in determining the relative rights of the various claimants; and an opportunity to be heard is not denied by accepting *ex parte* sworn statements if all testimony is to be subsequently reviewed by the court in a proceeding wherein testimony may be taken; nor is it a denial of due process of law to make the preliminary order of such a board effective pending final determination by the court, where provision is made for a stay on giving suitable bond for damages that may accrue; such requirements are not arbitrary and are a proper exercise of governmental protection of the water which in its absence might pass on and be lost.

The statutes of Oregon, 3 Lord's Laws, chap. 6 and chaps. 82, 86 and 97 of Laws of 1913, establishing proceedings before the State Water Board for ascertainment and adjudication of the relative rights of various claimants to the same water, do not deny due process of law because they require a claimant to assert his right and to pay fees for its consideration, or because they allow the board to accept and consider sworn statements taken *ex parte* without opportunity for cross-examination, or because they allow administrative orders to be followed and given effect before final action of the courts thereon.

THE facts, which involve the constitutionality, under the Fourteenth Amendment, of the statute of Oregon relating to appropriation and distribution of water, and the validity of proceedings thereunder, are stated in the opinion.

*Mr. Edward F. Treadwell,* with whom *Mr. Alexander Britton, Mr. Evans Browne* and *Mr. F. W. Clements* were on the brief, for appellant.

*Mr. George M. Brown,* Attorney General of the State of Oregon, *Mr. George T. Cochran* and *Mr. Will R. King,* with whom *Mr. J. O. Bailey, Mr. James T. Chinnock* and *Mr. Percy A. Cupper* were on the brief, for appellees.[1]

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a bill in equity to enjoin a proceeding before the State Water Board of Oregon looking to the ascertainment and adjudication of the relative rights of the various claimants to the waters of Silvies River in that State, the grounds upon which such relief is sought being (a) that it is essential to protect a jurisdiction previously acquired by the District Court, and (b) that the local statute, 3 Lord's Oregon Laws, Title XLIII, chap. 6; Laws 1913, chaps. 82, 86 and 97, authorizing and controlling the proceeding, is repugnant to the due process of law clause of the Fourteenth Amendment. An interlocutory injunction was denied by the District Court, three judges sitting, 217 Fed. Rep. 95, and motions to dismiss the bill as disclosing no right to relief were afterwards sustained.

The plaintiff, a California corporation, owns large tracts of land along the river and claims a vested right to use upon these lands a portion of the waters of the stream for irrigation and other beneficial purposes. The defendants are the members of the State Water Board and a few out of many persons and corporations claiming similar rights in the waters of the river. The statute under which the proceeding assailed is being conducted was enacted in 1909 and amended in 1913, and most of the rights affected by the proceeding are claimed to have arisen prior to the

---

[1] The briefs in this case are elaborate and exhaustive and too lengthy to permit abstracts to be included in the Reports; they cite several hundred authorities, state and Federal, on the questions involved and discussed.

statute—the plaintiff's as much as thirty years before. All claimants to the waters of the river, including the plaintiff, were brought into the proceeding by due notice and in conformity with the statute.

A general outline of the statute, as it has been construed by the Supreme Court of the State,[1] will serve to simplify the questions to be considered. It recognizes that in Oregon rights to use the waters of streams for irrigation and other beneficial purposes may be acquired by appropriation, adopts a comprehensive scheme for securing an economical, orderly and equitable distribution of the waters among those entitled to their use, incidentally prescribes a mode of determining the relative rights of the various claimants to the waters of each stream, and in large measure commits the administration of the scheme to the State Water Board and officers acting under the supervision of its members. When one or more users of water from any stream request it the board, if finding that the conditions justify it, is required to set in motion a proceeding looking to an ascertainment and adjudication of all rights to the waters of that stream. Every material step in the proceeding is to be attended with notice and an opportunity to be heard, the adequacy of which is manifest. In the beginning each claimant is required to present to the division superintendent a sworn statement of his claim showing its nature, inception and extent and all the particulars upon which it is based. These statements are to be exposed to public inspection, so that every claimant may determine whether there is occasion for him to oppose or contest the claims of others. The State Engineer, or a qualified assistant, is to measure the flow of the stream, the carrying capacity of the several ditches taking water

---

[1] See *Wattles* v. *Baker County*, 59 Oregon, 255; *Pringle Falls Power Co.* v. *Patterson*, 65 Oregon, 474, 484; *Claypool* v. *O'Neill*, ibid. 511; *Pacific Live Stock Co.* v. *Cochran*, 73 Oregon, 417; *In re Willow Creek*, 74 Oregon, 592; *In re North Powder River*, 75 Oregon, 83.

therefrom, and the land irrigated or susceptible of irrigation from each ditch, and also to take such other observations as may be essential to a proper understanding of the claims involved, a report of all of which is to be made in writing. Any claimant desiring to contest the claim of another may present to the division superintendent a sworn statement showing the grounds of contest and obtain a hearing before that officer at which the parties may present whatever evidence they have and may secure the attendance of witnesses by compulsory process. After the evidence in the contests is taken, it and the sworn statements of the several claimants, with the report of the engineer's measurements and observations, are to be laid before the board,—the statements and the report both being regarded as evidence appropriate to be considered. The board is then to examine all the evidence, make findings of fact therefrom, enter an order embodying the findings and provisionally determining the relative rights of the several claimants, and transmit the evidence and a copy of the order to the circuit court of the county wherein the stream or some part of it lies. Exceptions to the board's findings and order may be presented to the court and in disposing of them the court is to follow as near as may be the practice prevailing in suits in equity. All parties in interest, including the board as representing the State, are to be fully heard. Further evidence may be taken by the court, or the matter may be remanded with directions that additional evidence be taken and that the matter be again considered by the board, in which event the evidence and a copy of the further order of the board are to be transmitted to the court as in the first instance. In short, upon exceptions the court may reexamine the whole matter and enter such decree as the law and the evidence may require, whether it be an affirmance or a modification of the board's order. And even where no exceptions are presented a decree giving effect

to the order is to be entered, that is to say, the matter is not to be left as if the order in itself constituted an effective adjudication. An appeal from the court's decree may be taken to the Supreme Court of the State "as in other cases in equity," except that the time therefor is substantially shortened. When the rights involved are adjudicated the decree is to be "conclusive as to all prior rights and the rights of all existing claimants," and the right of each claimant as so settled is to be appropriately entered and shown upon the records of the board and upon those of the proper county. Each claimant also is to receive from the board a certificate setting forth the priority, extent and purpose of his right, and, if it be for irrigation purposes, a description of the land to which it is appurtenant. That the statute is not intended to take away or impair any vested right to any water or to its use is expressly declared in its first and seventieth sections, 3 Lord's Oregon Laws, Tit. XLIII, c. 6, §§ 6594, 6595.

At the time the statute was adopted, and continuously until this suit was begun, there were pending undetermined in the District Court [1] two suits in equity brought by the present plaintiff, one against two Oregon corporations and the other against another corporation of that State, in each of which suits the relative rights of the parties thereto in the waters of Silvies River were in controversy. These rights are reasserted and again brought in controversy in the proceeding before the board.

When that proceeding was first set in motion, the Pacific Live Stock Company, the plaintiff in this suit, presented to the board a petition and bond for the removal of the proceeding, or a part of it alleged to involve a separable controversy, to the District Court of the United States

---

[1] The suits were begun in the Circuit Court and when it was abolished were transferred to the District Court.

upon the ground that it was a suit between citizens of different States. But the attempted removal was not sustained, for the District Court remanded the proceeding and in that connection held that while it was pending before the board it was essentially preliminary and administrative, and not a suit at law or in equity within the meaning of the removal statute. *In re Silvies River,* 199 Fed. Rep. 495.

Thereafter the plaintiff presented to the division superintendent a sworn statement of its claim, accompanied by the fee prescribed,—at the same time protesting that the fee was extortionate, that the matter should be adjudicated in the Federal court and that the local statute was repugnant to the Fourteenth Amendment. More than two hundred other claimants also appeared and submitted statements of their claims, all being described as higher up the stream than that of the plaintiff. When the statements were opened to public inspection many contests were initiated. Several of these were against the plaintiff's claim; a large number were by the plaintiff against other claims, and there were others in which, it is said, the plaintiff was not directly concerned. It was at this stage of the proceeding, and before any evidence was taken in any of the contests, that this suit was brought.

Upon the assumption (1) that the removal proceedings were effective, (2) that the proceeding before the board is substantially identical with the pending suits, and (3) that that proceeding is essentially judicial in its nature, the plaintiff insists that the continued prosecution of the proceeding before the board constitutes an inadmissible interference with the District Court's jurisdiction and that this jurisdiction should be maintained and protected by an appropriate injunction.[1] The insistence must

---

[1] See Rev. Stat., § 720; *Taylor* v. *Taintor,* 16 Wall. 366, 370; *French* v. *Hay,* 22 Wall. 250, 253; *Rickey Land Co.* v. *Miller & Lux,* 218 U. S. 258, 262; *Ches. & Ohio Ry.* v. *Cockrell,* 232 U. S. 146, 154.

be overruled, because the assumption upon which it rests cannot be indulged.

Nothing was accomplished by the removal proceedings. The District Court did not take jurisdiction under them, but, on the contrary, by its remanding order adjudged that they were unauthorized. That order is not subject to review, either directly or indirectly, but is final and conclusive. Jud. Code, § 28; *Missouri Pacific Ry.* v. *Fitzgerald,* 160 U. S. 556, 580–583; *McLaughlin Bros.* v. *Hallowell,* 228 U. S. 278, 286. In so holding it is not intimated that the result would be different if the order were now open to review. See *Upshur County* v. *Rich,* 135 U. S. 467, 474, *et seq.* and cases cited.

The rule that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it until the controversy is determined, to the entire exclusion of the other, and will maintain and protect its jurisdiction by an appropriate injunction, is confined in its operation to instances where both suits are substantially the same, that is to say, where there is substantial identity in the interests represented, in the rights asserted and in the purposes sought. *Buck* v. *Colbath,* 3 Wall. 334, 345; *Watson* v. *Jones,* 13 Wall. 679, 715; *Rickey Land Co.* v. *Miller & Lux,* 218 U. S. 258, 262. This is not such an instance. The proceeding sought to be enjoined, although in some respects resembling the prior suits, is essentially different from them. They are merely private suits brought to restrain alleged encroachments upon the plaintiff's water right, and, while requiring an ascertainment of the rights of the parties in the waters of the river, as between themselves, it is certain that they do not require any other or further determination respecting those waters. Unlike them, the proceeding in question is a *quasi* public proceeding, set in motion by a public agency of the State. All claimants are required to appear and prove their claims; no one can refuse without

forfeiting his claim, and all have the same relation to the proceeding. It is intended to be universal and to result in a complete ascertainment of all existing rights, to the end; First, that the waters may be distributed, under public supervision, among the lawful claimants according to their respective rights without needless waste or controversy; Second, that the rights of all may be evidenced by appropriate certificates and public records, always readily accessible, and may not be dependent upon the testimony of witnesses with its recognized infirmities and uncertainties, and, Third, that the amount of surplus or unclaimed water, if any, may be ascertained and rendered available to intending appropriators.

Referring to a situation resembling that to which this proceeding is addressed, the Supreme Court of Maine said in *Warren* v. *Westbrook Manufacturing Co.*, 88 Maine, 58, 66: "To make the water power of economic value, the rights to its use, and the division of its use, according to those rights, should be determined in advance. This prior determination is evidently essential to the peaceful and profitable use by the different parties having rights in a common power. To leave them in their uncertainty,— to leave one to encroach upon the other,—to leave each to use as much as he can, and leave the other to sue at law after the injury,—is to leave the whole subject matter to possible waste and destruction." In considering the purpose of the State in authorizing the proceeding the Supreme Court of Oregon said in *In re Willow Creek*, 74 Oregon, 592, 613, 617: "To accelerate the development of the state, to promote peace and good order, to minimize the danger of vexatious controversies wherein the shovel was often used as an instrument of warfare, and to provide a convenient way for the adjustment and recording of the rights of the various claimants to the use of the water of a stream or other source of supply at a reasonable expense, the state enacted the law of 1909, thereby

to a limited extent calling into requisition its police power. . . . Water rights, like all other rights, are subject to such reasonable regulations as are essential to the general welfare, peace and good order of the citizens of the state, to the end that the use of water by one, however absolute and unqualified his right thereto, shall not be injurious to the equal enjoyment of others entitled to the equal privilege of using water from the same source, nor injurious to the rights of the public." The District Court, when making the remanding order, said (199 Fed. Rep. 502): "The water is the *res* or subject matter of the controversy. It is to be divided among the several claimants according to their respective rights. Each claimant is therefore directly and vitally interested, not only in establishing the validity and extent of his own claim, but in having determined all of the other claims." And that court further said that what was intended was to secure in an economical and practical way a determination of the rights of the various claimants to the use of the waters of the stream "and thus [to] avoid the uncertainty as to water titles and the long and vexatious controversies concerning the same which have heretofore greatly retarded the material development of the state." In such a proceeding the rights of the several claimants are so closely related that the presence of all is essential to the accomplishment of its purposes, and it hardly needs statement that these cannot be attained by mere private suits in which only a few of the claimants are present, for only their rights as between themselves could be determined. As against other claimants and the public the determination would amount to nothing. And so, upon applying the test before indicated, it is apparent that the assumed substantial identity between the proceeding and the pending suits does not exist.

The Supreme Court of the State holds that while the proceeding is pending before the board it is merely pre-

liminary and administrative, not judicial, and as this holding is a necessary result of that court's construction of the statute we accept it as correct. The question was first suggested in *Pacific Livestock Co.* v. *Cochran,* 73 Oregon, 417, and the court then said, p. 429: "It is not necessary here to decide whether the proceeding by the board to determine water rights is judicial or administrative. To a large extent it is administrative, but like many proceedings of that character, the board must also act in a *quasi* judicial capacity. A determination of the water rights to a stream finally ends as a report to the Circuit Court, and a decree of final determination by that court." Afterwards the question was both raised and determined in *In re Willow Creek,* 74 Oregon, 592. The court there reviewed the several provisions bearing upon the duties and powers of the board and said, pp. 610, 612, 614: "Their duties are executive or administrative in their nature. In proceedings under the statute the board is not authorized to make determinations which are final in their character. Their findings and orders are *prima facie* final and binding until changed in some proper proceeding. The findings of the board are advisory rather than authoritative. It is only when the courts of the State have obtained jurisdiction of the subject-matter and of the persons interested and rendered a decree in the matter determining such rights that, strictly speaking, an adjudication or final determination is made. It might be said that the duties of the water board are *quasi* judicial in their character. Such duties may be devolved by law on boards whose principal duties are administrative. . . . The duties of the board of control are similar to those of a referee appointed by the court. . . . By proceeding in accordance with the statute, when the matter is presented to the court for judicial action, it is in an intelligible form. The water board and state may then be represented by counsel."

As an alternative to its first contention, which we hold untenable, the plaintiff insists that the statute is repugnant to the due process of law clause of the Fourteenth Amendment; First, because it requires a claimant, at his own expense, to assert and prove his claim before the board, and to pay an extortionate fee for having it considered,—all under penalty of forfeiting his claim if he refuses,—notwithstanding the board acts only administratively and its findings and order are not conclusive; Second, because it permits the board to accept and act upon the sworn statements of claimants taken *ex parte* and upon the data set forth in the unsworn report of the engineer, without, as is asserted, affording any opportunity for showing their true value, or the want of it, by cross examination or otherwise; and, Third, because it requires that the board's findings and order, although only administrative in character, be followed and given effect in the distribution of the water pending the action of the Circuit Court upon them.

A serious fault in this contention is that it does not recognize the true relation of the proceeding before the board to that before the court. They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence and making an advisory report the board merely paves the way for an adjudication by the court of all the rights involved. As the Supreme Court of the State has said, the board's duties are much like those of a referee. (And see *Oregon R. R. & N. Co.* v. *Fairchild*, 224 U. S. 510, 526–527.) All the evidence laid before it goes before the court, where it is to be accorded its proper weight and value. That the State, consistently with due process of law, may thus commit the preliminary proceedings to the board and the final hearing and adjudication to the court is not de-

batable. And so, the fact that the board acts administratively and that its report is not conclusive does not prevent a claimant from receiving the full benefit of submitting his claim and supporting proof to the board. That he is to do this at his own expense affords no ground for objection; on the contrary, it is in accord with the practice in all administrative and judicial proceedings. The fee alleged to be extortionate is a charge graduated according to the amount of land irrigated under the claim submitted, and is fifteen cents per acre for the first one hundred acres, five cents per acre for the next nine hundred acres, and one cent per acre for any excess over one thousand acres. The purpose with which it is exacted is explained in the following excerpt from the opinion of the Supreme Court of the State in *Pacific Livestock Co.* v. *Cochran*, 73 Oregon, 417, 429, 430: "The board is required to take testimony which consumes the time of a stenographer paid by the State; to make, through the state engineer, an examination of the stream and the works diverting water therefrom, including the measurement of the discharge of the stream and of the capacity of the various ditches and canals; to examine and measure the irrigated lands and to gather such other data as may be necessary; to reduce the same to writing and make it a matter of record in the office of the state engineer; to make maps and plats of the various ditches and of the stream—all at the expense of the State. That these services are beneficial to the claimant and necessary to the preservation of his rights in the stream and the protection and assurance of his title goes without saying. . . . it is reasonable to assume that the expense to the State of the investigation, mapping, taking testimony and other acts involved in the determination of the claimant's rights will equal and in many cases exceed the amount of the fee charged; and that the method indicated by the act by which the amount is determined is

eminently fair." In our opinion, the charge is not extortionate and its exaction is not otherwise inconsistent with due process of law.

Upon examining the statute and the decisions of the Supreme Court of the State construing and applying it we are persuaded that it is not intended that the board shall accept and act upon anything as evidence that is devoid of evidential value or in respect of which the claimants concerned are not given a fair opportunity to show its true value, or the want of it, in an appropriate way. On the contrary, the statute discloses a fixed purpose to secure timely notice to all claimants of every material step in the proceeding and full opportunity to be heard in respect of all that bears upon the validity, extent and priority of their claims. And while it is true, according to the concessions at the bar, that the sworn statements of claim are taken *ex parte* in the first instance, it also is true that they are then opened to public inspection, that opportunity is given for contesting them and that upon the hearing of the contests full opportunity is had for the examination of witnesses, including those making the statements, and for the production of any evidence appropriate to be considered. Thus the fact that the original statements are taken *ex parte* becomes of no moment. And while it is true that the state engineer's report is accepted as evidence, although not sworn to by him, it also is true that the measurements and examinations shown therein are made and reported in the discharge of his official duties and under the sanction of his oath of office, and that timely notice of the date when they are to begin is given to all claimants. The report becomes a public document accessible to all and is accepted as *prima facie* evidence, but not as conclusive. *In re Willow Creek*, 74 Oregon, 592, 628. Of the occasion for such a report, the Supreme Court of the State says in that case, p. 613: "In a proceeding

before the board, provision is made for an impartial examination and measurement of the water in a stream, of the ditches and canals, and of the land susceptible of irrigation, and for the gathering of other essential data by the state engineer, including the preparation of maps, all to be made a matter of record in the office of the state engineer, as a foundation for such hearing and to facilitate a proper understanding of the rights of the parties interested. Under the old procedure such information was often omitted. When measurements were made by the various parties to a suit they were nearly always made by different methods and were conflicting. The other evidence in regard thereto, being mere estimates, rendered a determination extremely difficult for the court and of questionable accuracy and value when made." Considering the nature of the report and that claimants may oppose it with other evidence, it is plain that its use as evidence is not violative of due process. *Meeker* v. *Lehigh Valley R. R.*, 236 U. S. 412, 430.

The provision that the water shall be distributed in conformity with the board's order pending the adjudication by the court has the sanction of many precedents in the legislation of Congress and of the several States, notably in the provision in the Interstate Commerce Act directing that the orders of the commission shall be effective from a date shortly after they are made, unless their operation be restrained by injunction. These legislative precedents, while not controlling, are entitled to much weight, especially as they have been widely accepted as valid. Although containing no provision for an injunction, the statute under consideration permits the same result to be reached in another way, for it declares that the operation of the board's order "may be stayed in whole or in part" by giving a bond in such amount as the judge of the court in which the proceeding is pending may prescribe, conditioned for the payment of such dam-

ages as may accrue by reason of the stay. It is not, therefore, as if the requirement were absolute. As has been seen, the order is made only after adequate notice and full opportunity to be heard, and when made is, with reason, deemed *prima facie* correct. It relates to flowing water, to the use of which there are conflicting claims. Unless diverted and used the water will pass on and be lost. No claimant is in possession and all assert a right to take from the common source. In this situation we think it is within the power of the State to require that, pending the final adjudication, the water shall be distributed, according to the board's order, unless a suitable bond be given to stay its operation. Such a requirement is not arbitrary, does not take from one and give to another and is not otherwise offensive to a right conception of due process. *Detroit and Mackinac Ry.* v. *Michigan Railroad Commission,* 240 U. S. 564; *Wadley Southern Ry.* v. *Georgia,* 235 U. S. 651, 660; *Montezuma Canal* v. *Smithville Canal,* 218 U. S. 371, 385.

*Decree affirmed.*