[Sac. Nos. 5420, 5447. In Bank.—Aug. 27, 1941.]

J. J. FLEMING et al., Plaintiffs and Respondents, v. J. R. BENNETT et al., Defendants and Respondents; A. C. BARHAM et al., Appellants.

Williamson & Wallace, Charles E. Greenfield, Jr., and Willard F. Williamson for Appellants.

Grover C. Julian, J. A. Pardee, Hardin Barry, H. P. Dechant, Herbert W. Whitten, James A. Nutting, Arthur J. Anderson, Farrand & Farrand, George E. Farrand, Edward E. Tuttle, Garret McEnerney II, C. C. Carleton, Spencer Burroughs, C. T. Waldo and Orrick, Dahlquist, Neff & Herrington for Respondents.

SHENK, J.—In July, 1934, the plaintiffs commenced an action in the Superior Court of Lassen County against some two hundred defendants to quiet title to their asserted rights in and to the use of the waters of the Susan River. On August 21, 1934, the court made an order of reference to the division of water resources, department of public works. On April 18, 1940, the court rendered its final decree based in the main on the report filed by the referee. Subsequently, on the same day, the court made a supplemental order providing for water master supervision by said division of water resources of the water distribution on the Susan River and its tributaries during the 1940 irrigation season in accordance with the provisions of the final decree. Twelve of the defendants have appealed from the final decree and from the supplemental order.

The appeal from the final decree will first be considered.

The Susan River rises on the eastern slopes of the Sierra Nevada in the southwest portion of Lassen County at an elevation of 7900 feet. It follows a general easterly direction, passes through the city of Susanville which lies at an elevation of 4200 feet, and carries its waters and the waters of its tributaries to Honey Lake, which is at an elevation of

about 3900 feet. The total area embraced in the Susan River stream system is approximately 850 square miles, exclusive of 115 square miles in Horse Lake watershed which is now a part of the system. The area riparian to or watered by the Susan River and its tributaries comprises about 33,000 acres. Less than five per cent of the total irrigated area lies in mountain valleys above Susanville. There are eleven storage reservoirs in the Susan River watershed having a combined capacity of about 38,500 acre feet. The plaintiffs are owners of lands in the delta region of the river, which divides itself into three main channels or sloughs.

The plaintiffs and the defendants are or represent all of the users of the water in the Susan River watershed. Controversial activity and piecemeal litigation had prevailed among the users for about fifty years. The present action was instituted pursuant to a written agreement, signed by ninety per cent of the users of the waters involved, to settle their respective rights by the commencement of an action and a reference to the water commission pursuant to the provisions of section 24 of the Water Commission Act (Stats. 1913, p. 1012, as amended Stats. 1931, p. 2421, Deering's Gen. Laws, 1937, Act 9091). Shortly after the complaint was filed and before the filing of any further pleadings, the court made the order of reference. In the order as modified the division of water resources was directed to make its investigation concerning the physical facts involved without the necessity of hearings or the taking of testimony.

Section 24 of the Water Commission Act provides that in case suit be brought in any court of competent jurisdiction for determination of rights to water or the use of water, the court in its discretion, may order a reference to the State Water Commission, or Division of Water Resources, as it is now called, as referee; that the reference may include any issue or any number of issues or all of the issues involved; that "the court may, in its discretion, refer such suit to the state water commission for investigation of and report upon any one or more or all of the physical facts involved, in which event, said commission may, in its discretion, base its report solely upon its own investigation or investigations or in addition thereto may hold a hearing or hearings and take testimony and the report filed by the commission upon

such a reference for investigation by it shall be *prima facie* evidence of the physical facts therein found; provided, however, that the court shall hear such evidence as may be offered by any party to rebut such report of the state water commission or such *prima facie* evidence.'' Provision is made in said section for notice to the parties and an opportunity to file objections to the draft of the report, the same to be considered by the commission before filing its report as referee. After filing the report with the clerk of the court, notice is provided to be given to the parties. The section then reads: ''The report of the state water commission as referee shall be subject to review by the court upon exceptions thereto filed with the clerk of the court within thirty days after date of the filing thereof, provided that no exception shall be considered except in the court's discretion, or for good cause shown, unless it shall appear that the matter of the exception had theretofore been presented to the commission in the form of an objection.''

The appellants' first contention is that the court had no authority to make an order of reference pursuant to section 24 of the act until the issues in the case had been joined by the filing of answers. The legislature was apparently of the view that the salutary provisions of the act and an endeavor to expedite hearings and decisions in controversies involving conflicting water rights would be defeated unless some means were provided to overcome the delays which usually occur before and during the trial of the actions. Pleadings on the part of a defendant generally are for the purpose of narrowing the issues and thus saving the time of the court. In actions involving numerous conflicting water rights it has been deemed expedient, both by the legislature and by this court (see *Wood* v. *Pendola,* 1 Cal. (2d) 435 [35 Pac. (2d) 526]; *Peabody* v. *City of Vallejo,* 2 Cal. (2d) 351 [40 Pac. (2d) 486]; *Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal. (2d) 489 [45 Pac. (2d) 972]; *City of Lodi* v. *East Bay Municipal Utility Dist.,* 7 Cal. (2d) 316, 341 [60 Pac. (2d) 439]; *Rancho Santa Margarita* v. *Vail,* 11 Cal. (2d) 501, 559 [81 Pac. (2d) 533]; *Meridian, Ltd.,* v. *City and County of San Francisco,* 13 Cal. (2d) 424 [90 Pac. (2d) 537, 91 Pac. (2d) 105]), that in the discretion of the trial court the investigation of the facts be confided to the Di-

vision of Water Resources of the Department of Public Works as referee. In such actions the delays incident to the joining of issues by the defendants' pleadings may not be necessary in order that the court be in position to determine whether expert investigation is required or desirable. It is the statute, and not the defendants' pleadings, which confers jurisdiction upon the court to appoint the referee, and when appointed the referee has the power to enter upon the investigation immediately. Thus, in the present case, the application for the appointment of the referee was made upon the filing of the complaint and on the request of about ninety per cent of the users of the waters involved in the action. No good reason has been suggested why the court should have delayed the appointment of the referee until after the filing of formal pleadings by the defendant users. A controversy on this point arose in the trial court which modified its order so as to refer to the division the investigation of the "physical facts" as distinguished from the "issues." Nevertheless the section clearly indicates that the phrase "issues involved" is not to be narrowed in meaning to apply only to issues "joined" or "framed" by the pleadings. The court is given a broad discretion as to when and how much of the investigation or of conducting hearings and taking testimony should be referred to the referee. We conclude that the court was acting within lawful authority conferred by the statute when it referred the investigation to the Division of Water Resources immediately after the complaint was filed and before any issues tendered by the complaint were joined by the filing of pleadings by the defendants.

The appellants next contend that section 24 vests judicial power in the Division of Water Resources in violation of the state Constitution. The appellants say: "If the section is to be read as empowering the superior court to delegate to the Division of Water Resources the authority to decide the case or determine the rights of the parties to water or the use of water, the section is unconstitutional as violative of section 1 of Article VI of the Constitution of California vesting all judicial powers in the courts therein named, and the legislature had no authority to create other judicial tribunals or to vest them with judicial power." Neither the section nor the order of the trial court may be construed as

vesting in or delegating to the Division of Water Resources any judicial power. The division operates merely in an advisory capacity to the court, and the court itself performs the judicial function of finally determining the issues and rendering the decision and judgment. It must be taken as settled that the division does not exercise judicial functions. (*Tulare Water Co.* v. *State Water Commission*, 187 Cal. 533 [202 Pac. 874]; *Department of Public Works* v. *Superior Court*, 197 Cal. 215 [239 Pac. 1076]; *Mojave River Irr. Dist.* v. *Superior Court*, 202 Cal. 717 [262 Pac. 724].)

In *Tulare Water Co.* v. *State Water Commission, supra,* it was pointed out that the water commission, in the matter of granting permits, and in investigating and ascertaining pursuant to section 10 of the act whether the waters of streams were appropriated waters, exercised some degree of discretion, but that it was not granted and it did not have the power to determine judicially any controversies concerning unappropriated waters or conflicting claims thereto and that it exercised only a supervisorial discretion in the matter of granting permits. It was held that the powers conferred upon that body were administrative only.

In *Department of Public Works* v. *Superior Court, supra,* this court ordered the issuance of a writ prohibiting the superior court from entertaining a review of the action of the Division of Water Resources, under section 12 of the Water Commission Act, on the ground that the division was not exercising a judicial function in determining and prescribing pursuant to the statute the time within which the full amount of the water appropriated should be applied to a useful or beneficial purpose. It was pointed out that the section did not provide for notice, hearing or procedure ''looking to the adjudication of the rights of any one''; that the action of the division under the section did not constitute a hearing and a determination of a controversy in a judicial sense.

Likewise in the Mojave River Irr. Dist. Co. case, involving section 1b of the act as it then read, this court issued a writ prohibiting the superior court from entertaining a review of the action of the Division of Water Rights in granting to the irrigation district a permit to appropriate water. The court followed its prior decisions on the question of whether the

division was exercising judicial functions, holding that the matter before the Division of Water Resources was administrative and not judicial in character.

In the case of *Wood* v. *Pendola,* and the other cases above cited, the court suggested consideration of the plan and procedure provided by the act of reference to the division of water resources for investigation of the facts and a recommendation of a physical solution of the problems presented. There was no intimation by this court in those cases that the division would be exercising other than an administrative function. In the entire proceeding the only body exercising a judicial function is the trial court to which the report is made.

 On the hearing before the trial court the appellants objected to the report on the ground that it was hearsay and incompetent. They also now claim that the report was inadmissible as evidence because it was compiled from *ex parte* investigations conducted by the Division of Water Resources without hearings or the taking of testimony and without the presence of any of the parties to the suit.

The report of the division is comprehensive. It consists of 195 pages of findings and conclusions and as many or more pages of schedules, tables and plates. It deals with and recommends findings with respect to 259 claimed rights of water users in the Susan River watershed. These suggested findings, conclusions and tables treat of the physical facts investigated by the referee. There is also included a general description of the watershed, reports on climate, soil classification, crops, run-off records, the various uses of the water and descriptions of 259 diversion systems and measurements, tabulation and report on supplemental springs and reservoirs, description of methods of irrigation, a discussion and report on losses and accretions in channels and ditches, a chapter devoted to the duty of water, or general irrigation and domestic requirements in the various sections, and a discussion of certain of the allotments compiled in the schedules or tables. Table 1, comprising 41 closely tabulated sheets, contains specific descriptions of the areas irrigated from the Susan River and its tributaries and the names of the respective owners of such areas. Table 2, comprising 12 sheets, gives a summary of the systems diverting water from

the Susan River and its tributaries, the names of the diverters and of the diversions, the acreage irrigated under each diversion, and the total acreage irrigated on each parcel. Other tables give the monthly and seasonal precipitation in the seasons 1900–01 to and including 1934–35, the records of temperatures, dates of killing frosts and snowfalls at Susanville, and the continuous records of daily and monthly discharges and releases in cubic feet per second of Susan River and its tributaries at designated points in various years. Similar tables give estimated daily consumptions, diversions, and rediversions, accretions, and daily water supply. Table 86 gives the estimated crop yields on about 50 typical lands irrigated from the Susan River and its tributaries. Table 87 reports the gross use of water for acreage irrigated from the Susan River and its tributaries during the period of investigation in 1935. Many maps and graphs are included. The report also contains a copy of an agreement entered into by all the ranch owners with the exception of three, two of whom are appellants herein. The agreement, dated March 18, 1935, supplemented by an agreement dated June 4, 1935, provided for a tentative allocation of waters of the stream system for the 1935 irrigation season and for the distribution of the waters in accordance with the allocation which would be administered by the Division of Water Resources through the offices of a water master. The agreement contained schedules of priorities and allotments, and acreages to be served. The signers gave consent to the advancement of funds by the division to defray the expenses of investigation, supervision, and preparation of its report, and for later proportionate allotment of the expenses among the signatory users, with the reservation that nothing in the agreement should be construed as admissions against the signers, and that the distribution of water as agreed should not prejudice the rights of any of the signers. Six of the appellants had filed with the referee objections to the draft of the report. The other six made no objection before the report was filed with the court. Five of the appellants filed with the court objections and exceptions to the report. On the hearing the court admitted the report in evidence over the objections. No evidence was offered by the appellants in rebuttal or at all. The court based its decree on the report and additional evi-

dence introduced at the hearing in open court. ▆▆▆ The appellants do not question the power of the legislature to prescribe that the report of the referee shall be *prima facie* evidence of the facts reported. Indeed, that power may not be denied. (See *People* v. *Buckley*, 143 Cal. 375, 393 [77 Pac. 169]; *Miller & Lux, Inc.*, v. *Secara*, 193 Cal. 755, 766 [227 Pac. 171]; *Pacific Live Stock Co.* v. *Lewis*, 241 U. S. 440 [36 Sup. Ct. 637, 60 L. Ed. 1084].) The parties were not deprived of any constitutional right. They were afforded full opportunity to be heard in opposition to the report as evidence, and to introduce evidence contrary to the facts appearing therein. Constitutional mandates are observed where such facts are not made incontrovertible and opportunity is given to refute them in court. (*Pacific Live Stock Co.* v. *Lewis, supra;* see also *Heiner* v. *Donnan*, 285 U. S. 312 [52 Sup. Ct. 358, 76 L. Ed. 772].) ▆▆▆ The appellants have had that opportunity and have chosen not to take advantage of it, but to rest their case on objections to the competency of the report as evidence. They do not contend that the facts with reference to their rights and claims have not been fully and correctly reported to the court by the division of water resources or that all of the rights and claims of all of the users of the waters involved in the action have not been determined by the decree, or that appellants have been deprived by the decree of the use of any water to which they are justly entitled. The report appears to be definite, comprehensive, and an expeditious solution of the numerous rights to the use of waters in this extensive area. As indicated by the cases hereinbefore cited, this court has heretofore commended and approved the prescribed plan for expediting the determination of conflicting water rights in this state by reference to the Division of Water Resources. Counsel representing defendants owning or controlling more than one half of the area affected has pointed out the disadvantages and excessive cost of piecemeal litigation on the Susan River for over fifty years and the satisfaction generally felt in having a comprehensive solution of all of the water rights on the stream in this one proceeding. Here all of the material issues and the rights of all the users in the watershed were settled by the facts found by the court based on the report of the referee and additional evidence which necessitated only a short hear-

ing. The appellants have apparently been unable to discover any error or improper ruling of the court on the merits with respect to the rights determined by the decree, for none is asserted.

The case presents no special procedure differing from the ordinary practice and procedure of superior courts in original actions, such as was considered in the case of *Mojave River Irr. Dist.* v. *Superior Court,* 202 Cal. 717 [262 Pac. 724]. As we have noted, the legislature has power to provide for reference in special classes of cases of which the present case is one.

It follows that all of the pertinent constitutional safeguards were observed by the legislature in enacting the provisions of section 24 and by the court in the trial of the action. The evidence fully supports the judgment, and the order denying the appellants' motion for a nonsuit was proper.

The foregoing discussion and conclusions answer all of the appellants' objections urged on the appeal from the final decree of April 18, 1940. One additional contention, however, will be noted. It is asserted that an interlocutory order of the court made on March 24, 1939, was in excess of the court's jurisdiction and therefore void. The interlocutory order was made after the case was tried before the court and submitted for decision. The order recited that the court required additional time to review the evidence, including the report of the referee; that the court took judicial notice of the subnormal precipitation in the area in the 1939 season; and that supervision of distribution of water by the court, through the offices of a water master, during that irrigation season was necessary to preserve the public peace, convenience and welfare, and to prevent waste or unreasonable use or method of use of the waters; that pending the preparation and adoption of findings of fact and conclusions of law the report of the referee fully and fairly defined the rights of the parties for the purpose of the order. The court approved and adopted the referee's report for the purpose of the order, and directed the Division of Water Resources, through the agency of a water master, to supervise the distribution of water for the 1939 irrigation season, in accordance with the provisions of the report. It provided for

apportionment of the cost of the supervision ratably among the users in accordance with section 37f of the act, subject to objection and settlement by the court. On January 29, 1940, the court entered its decree apportioning the cost of the supervision for the 1939 irrigation season among the users of the waters. The appellants base their claim of illegality of those orders on the same grounds urged in support of the claim of illegality in respect to the final decree. Such claims have been found to be without merit. The Division of Water Resources had general power under the act (sections 37 and 37a) to supervise the distribution of water in accordance with the decree of the court. The court had the power to adopt the necessary means to make its orders effective. (Section 187, Code of Civil Procedure.) The order on its face discloses the necessity for the means adopted. Courts have heretofore approved the execution of similar determinations and apportionment of costs pending final adjudication by the court. (*In re Water Rights in the Humboldt River Stream System,* 49 Nev. 357 [246 Pac. 692] ; *Pacific Live Stock Co.* v. *Lewis,* 241 U. S. 440 [36 Sup. Ct. 637, 60 L. Ed. 1084].)

▮ The foregoing observations also dispose of the appellants' contentions in respect to their appeal from the supplemental order of April 18, 1940, appointing the Division of Water Resources to supervise through the agency of a water master, the distribution of the 1940 irrigation waters in accordance with the provisions of the final decree. The order also provided for apportionment of the cost of such water master service with opportunity to file objections and to be heard thereon. The appellants contend that the court, having entered a final decree in the action, was without jurisdiction to make any further order. The evidence produced before the court supports the finding contained in the order that supervision of the distribution of waters in accordance with the provisions of the decree during the 1940 irrigation season was necessary in order to preserve the public peace, convenience and welfare and to prevent waste or unreasonable use or method of use of the waters of the Susan River and its tributaries in accordance with the provisions of section 3, article XIV of the Constitution. Furthermore, the record shows that the waters of the Susan River watershed have been distributed through the services of a water master each

year since the season of 1935, and that the users are receiving water master supervision in the current irrigation season. Here again the appellants do not claim that they have been deprived of the use of any water to which they are justly entitled.

The final decree and the supplemental order, dated April 18, 1940, are and each is affirmed.

Gibson, C. J., Carter, J., Traynor, J., and Moore, J. *pro tem.,* concurred.

Appellants' petition for a rehearing was denied September 25, 1941.