In the Matter of the DETERMINATION OF CONFLICTING RIGHTS TO the USE OF WATER FROM the SALT RIVER ABOVE GRANITE REEF DAM and its Tributaries Including Tonto Creek, Excluding the Verde River and its Tributaries, (three cases).

Petition of SALT RIVER VALLEY WATER USERS' ASSOCIATION. (three cases).

SALT RIVER PIMA–MARICOPA INDIAN COMMUNITY, Plaintiff,

v.

The STATE OF ARIZONA and John M. Little, Acting Commissioner of the Arizona State Land Department, Defendants.

SAN CARLOS APACHE TRIBE OF ARIZONA, Plaintiff,

v.

The STATE OF ARIZONA, a body politic; and the State Land Department of the State of Arizona; and John M. Little, Individually and as Acting Commissioner of the State Land Department of the State of Arizona; and Salt River Valley Water Users' Association, an Arizona Corporation, Defendants.

PAYSON COMMUNITY OF YAVAPAI– APACHE INDIANS, Plaintiff,

v.

The STATE OF ARIZONA, a body politic; and the State Land Department of the State of Arizona; and John M. Little, Individually and as Acting Commissioner of the State Land Department of the State of Arizona; and Salt River Valley Water Users' Association, an Arizona Corporation, Defendants.

FORT McDOWELL MOHAVE–APACHE INDIAN COMMUNITY, for and on behalf of itself and its members, Plaintiff,

v.

SALT RIVER VALLEY WATER USERS' ASSOCIATION; Salt River Project Agricultural Improvement and Power District; City of Phoenix; City of Prescott; City of Jerome; Phelps Dodge Corpora-

tion; Phelps Dodge Industries, Inc.; Arizona Water Company; Miller Brothers Farms, Inc.; Camp Verde Water Systems; Cottonwood Water Works, Inc.; Copper Basin Water Co.; V Bar V Cattle Co., Inc.; Harold W. Bullard; and the State of Arizona, Individually and as representative of a class composed of all others similarly situated, Defendants.

Nos. CIV 79–182 PHX VAC to CIV 79–187 PHX VAC and CIV 79–267 PHX VAC.

United States District Court, D. Arizona.

Jan. 18, 1980.

William H. Veeder, Washington, D. C., Kathleen A. Rihr, Phoenix, Ariz., for White Mountain Apache Tribe.

Jennings, Strouss. & Salmon by M. Byron Lewis, John B. Weldon, Jr., Phoenix, Ariz., for Salt River Valley Water Users' Association.

Lawrence A. Aschenbrenner, Arlinda F. Locklear, Native American Rights Fund, Washington, D. C., Gary L. Thomas, Phoenix, Ariz., for Ft. McDowell Mohave-Apache Indian Community.

Rodney B. Lewis, Sacaton, Ariz., Cox & Cox, Sandra L. Massetto, Phoenix, Ariz., for Gila River Indian Community.

Philip J. Shea, Marks, Shea & Wilks, Phoenix, Ariz., Joe P. Sparks, Sparks & Siler, P. C., Scottsdale, Ariz., for San Carlos Apache Tribe of Arizona and Payson Community of Yavapai-Apache Indians.

Russell A. Kolsrud, Asst. Atty. Gen., Civ. Div., Phoenix, Ariz., for State of Arizona.

Michael D. Hawkins, U. S. Atty., James P. Loss, Asst. U. S. Atty., Phoenix, Ariz., Myles E. Flint and Steven E. Carroll, Attys., Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for United States.

## OPINION AND ORDER

CORDOVA, District Judge.

The matters now before this Court are the defendants' motions to dismiss (nos. CIV 79–185, 79–189, 79–187 and 79–267) and the defendants' motions to remand (nos. CIV 79–182, 79–183 and 79–184). These actions, generally, request a declaration of rights to the water of several water systems in the State of Arizona.

The central question presented by these cases is whether this Court should remand these cases to the State court in light of the McCarran Amendment, 66 Stat. 560, 43 U.S.C. § 666 and the decision of the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 880, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (hereinafter referred to as "Akin"). Also, whether dismissal is warranted, where proper, in light of considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation". *Kerotest Mfg. Co. v. C–O–Two Five Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952) as quoted by the Court in *Akin, supra*.

The McCarran Amendment, 66 Stat. 560, 43 U.S.C. § 666[1] provides that "consent is

---

1. 43 U.S.C. Sec. 666 reads as follows:

"§ 666. SUITS FOR ADJUDICATION OF WATER RIGHTS—JOINDER OF UNITED STATES AS DEFENDANT; COSTS.

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropria-

tion under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the

hereby given to join the United States as a defendant in any suit (1) for the adjudication of water rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit."

■ First, the Court notes that the McCarran Amendment in no way diminishes federal district court jurisdiction under Title 28, United States Code Sections 1331 and 1362, but rather that "[t]he immediate effect of the Amendment is to give consent to jurisdiction in the State courts concurrent with jurisdiction in the Federal courts over controversies involving federal rights to the use of water." *Akin*, 424 U.S. at 809, 96 S.Ct. at 1242.

■ This Court agrees with *Akin*, that the McCarran Amendment is to be construed as reaching federal water rights on behalf of Indians and that mere subjection of Indian rights to legal challenge in State court would not imperil those rights. *Akin*, 424 U.S. at 812, 96 S.Ct. at 1243.

The various Indian Tribes in this case contend that considerations of wise judicial administration and the factors enumerated in *Akin* do not dictate that the present cases be adjudicated in the State courts.

The Court in *Akin*, in concluding that "considerations of wise judicial administration" required that the action be dismissed stated the following:

"Turning to the present case, a number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amend-

ment itself. The clear federal policy evinced by that legislation is the avoidance of piecemeal adjudication of water rights in a river system. This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent disposition of property. This concern is heightened with respect to water rights, the relationships among which are highly interdependent. Indeed, we have recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings. See *Pacific Livestock Co. v. Oregon Water Bd.* [241 U.S. 440] at 449 [36 S.Ct., at 641, 60 L.Ed., at 1096]. The consent to jurisdiction given by the McCarran Amendment bespeaks a policy that recognizes the availability of comprehensive state systems for adjudication of water rights as the means for achieving these goals." *Id.* at 819, 96 S.Ct. at 1247.

A.R.S. § 45–231 *et seq.*, under which the State actions have been brought set forth a comprehensive scheme for the determination of conflicting water rights leading to a State court decree adjudicating the respective water rights. These State proceedings, as the Colorado water rights proceedings, reach "all claims, perhaps month by month, but inclusively in the totality". *United States v. District Court In and For Water Div. No. 5*, 401 U.S. 527, 529, 91 S.Ct. 1003, 1005, 28 L.Ed.2d 284 (1971), quoted by the Court in *Akin*, 424 U.S. at 820, 96 S.Ct. at 1247.

same extent as a private individual under like circumstances: PROVIDED that no judgment for costs shall be entered against the United States in any such suit.
SERVICE OF SUMMONS
(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.
JOINDER IN SUITS INVOLVING USE OF INTERSTATE STREAMS BY STATE

(c) Nothing in this section shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream. July 10, 1952, c. 651, Title II, § 208(a)–(c), 66 Stat. 560.

Beyond the Congressional policy expressed by the McCarran Amendment, the Court noted that the "apparent absence of proceedings in the District Court other than filing of the complaint, prior to the motion to dismiss" and "the extensive involvement of State water rights occasioned by this suit naming 1000 defendants" were significant factors consistent with the policy underlying the enactment of the McCarran Amendment. Both these factors are present in the cases now before this Court.

The tribes contend that the following footnote in *Akin* precludes dismissal or remand to the State courts of these actions:

"Whether similar considerations would permit dismissal of a water suit brought by a private party in federal district court is a question we need not now decide."

It is true that *Akin* is distinguishable from the present cases in that there the United States had filed the action in the Federal District Court. However, this Court is of the opinion that in the present case there is no practical distinction between an action filed by the Government and one filed by these tribes where these same parties' rights will be fully adjudicated in the McCarran Amendment proceedings in the State courts. To hold otherwise would be to undermine the policy against piecemeal adjudication underlying the McCarran Amendment by finding that a mere substitution of the name of one party for the other would change the result.

The tribes contend that *Akin* is further distinguishable for the reason that *Akin* arose out of Colorado, and Colorado does not have a "disclaimer clause" in its enabling act and its State Constitution. The Arizona Constitution, however, contains such a clause, (Ariz.Const., Art. 20, Par. 4, A.R.S.)[2] and the disclaimer language of the Arizona Constitution is substantially duplicative of that in the Arizona Enabling Act (36 Stat. 369).[3]

■ The tribes maintain that the language of these disclaimer provisions prohibit state jurisdiction. This Court rejects this contention and cites *Jicarilla Apache Tribe v. United States*, 601 F.2d 1116, (10th Cir.), *cert. denied* —— U.S. ——, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979) with approval. In *Jicarilla*, the Court held that the New Mexico disclaimer provision did not serve as a bar to New Mexico's adjudication of the federal water rights in the Gila National Forest.

The New Mexico disclaimer provision, like the Arizona disclaimer provisions, applies to Indian lands and the "unappropriated and ungranted public lands being within the boundaries thereof." This Court agrees with the statement in *Jicarilla* that "in view of the McCarran Amendment and the strong policy behind it outlined in the Colorado River opinion of the Supreme Court we feel that subject matter jurisdiction should be recognized as allowable in the State courts of general water rights adjudication proceedings, there being implicit modification of the Enabling Act to that

---

**2.** Arizona Constitution, Article 20, Paragraph 4 reads:

"FOURTH. PUBLIC LANDS; INDIAN LANDS.

Fourth. The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States.

**3.** The Arizona Enabling Act (36 Stat. 569) reads in part:

Second. That the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that until the title of such Indian or Indian tribes shall have been extinguished the same shall be and remain subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States;
. . .

extent, as necessary." (601 F.2d at 1131). Nine states, the majority of which are Western states, have disclaimer clauses. In the Senate hearings on the Amendment, participants for the Department of Justice and the Department of the Interior made clear that the proposal would include water rights reserved on behalf of Indians. *Akin, supra,* 424 U.S. at 811–812, 96 S.Ct. at 1243. Furthermore, the McCarran Amendment appears to have been intended to be utilized primarily in the Western states. See S.B. 755, 82nd Cong., 1st Sess. (1951), and Hearings on S.18 before the Subcommittee of the Senate Committee on the Judiciary in the United States Senate, 82nd Cong., 1st Sess. p. 7 (1951). To hold now that the Arizona disclaimer clauses and similar clauses contained in the enabling acts of six other Western states bar general water rights adjudications in the State court would defeat the Amendment's objective.

The tribes further contend that the State adjudication proceeding is not a McCarran Amendment proceeding because the Arizona water rights determination law deliberately excludes non-Indian users of percolating groundwater.

Certain types of groundwater are subject to the doctrine of prior appropriation in Arizona, and the Arizona statutory adjudication scheme recognizes these appropriable rights. First, Sec. 45–101(A) of the Arizona Revised Statutes defines appropriable water as:

"The waters of all sources, flowing in streams, canyons, ravines or other natural channels, *or in definite underground channels,* whether perennial or intermittent, flood, waste or surplus water, and of lakes, ponds and springs on the surface, belong to the public and are subject to appropriation and beneficial use as provided in this chapter." (emphasis added)

In addition to this section, the Arizona Supreme Court has held two classes of subterranean waters to be public waters and, therefore, subject to the doctrine of prior appropriation:

(1) the subflow of surface streams or rivers; and

(2) underground streams flowing in defined underground channels with definite banks.

*Maricopa County Municipal Water Conservation District No. 1 v. Southwest Cotton Co.,* 39 Ariz. 65, 4 P.2d 369 (1931).

■ The class of subterranean water commonly referred to as "percolating groundwater" is not public water and is not appropriable under Arizona state law. The Arizona Supreme Court has defined percolating groundwater as:

"[F]iltrating or percolating water oozing through the soil beneath the surface in undefined and unknown channels, and therefore a component part of the earth, having no characteristic of ownership distinct from the land itself. *Howard v. Perrin,* 8 Ariz. 347, 353, 76 P. 460, 462 (1904), aff'd 200 U.S. 71, 26 S.Ct. 195, 50 L.Ed. 374 (1906)."

■ Percolating water under Arizona law is owned by the owner of the land under which it lies. *Bristor v. Cheatham,* 75 Ariz. 227, 255 P.2d 173 (1953). Thus, there is no priority date aspect to the right to the use of percolating groundwater. In short, percolating groundwater rights are not relative rights; instead, each landowner is entitled to the reasonable use of percolating groundwater underlying his land.

The federal water rights claimed by the tribes arose from the judicial doctrine of federal reserved water rights first enumerated in *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908). The essence of the federal reserved rights doctrine, as the Supreme Court observed in *Cappaert v. United States,* 426 U.S. 128, 96 S.Ct. 2062, 48 L.Ed.2d 523 (1976) is that:

"[W]hen the Federal Government withdraws its lands from the public domain and reserves it for a federal purpose, the Government, by implication, reserves appurtenant water then unappropriated to the extent needed to accomplish the purpose of the reservation. In so doing the United States acquires a reserved right in unappropriated water which vests on the date of the reservation and is superior to

the rights of future appropriators." *Id.* at 138, 96 S.Ct. at 2069.

The Supreme Court in *Cappaert* further stated that the "United States can protect its water from subsequent diversion, whether the diversion is of surface or groundwater". 426 U.S. at 143, 96 S.Ct. at 2071.

Section 45–251(5), Arizona Revised Statutes, which effectively sets forth the scope of the State proceedings, defines the phrase "river system and source" as "[A]ll water appropriable under [A.R.S.] Section 45–101 and all water subject to claims based upon federal law."

■ Thus, the State proceedings will determine federal reserved water rights (including federal reserved rights to percolating groundwater) and rights to water appropriable under State law. The only water rights excluded from the State proceeding are those rights to percolating groundwater arising solely under existing Arizona case law. (See *Bristor v. Cheatham, supra*).

With the foregoing in mind, this Court now turns to the issue of whether the State proceedings qualify as a McCarran Amendment proceeding.

The McCarran Amendment applies to the adjudication and administration of "rights to the use of water of a river system or other source". The State proceedings encompass all water appropriable under State and Federal Law. Whether these causes remain in this Court for determination or are left for determination in the State courts, the applicable law will be the same. Those rights which are State created will be determined by State law and Federal law will be applied to determine those rights which derive from Federal law. It is difficult, therefore, to imagine how the State proceedings could be considered as anything less than a general adjudication of water rights.

We must keep in mind and this Court further notes that water is a most valuable natural resource in the southwestern part of the nation. The State and the people residing within the State depend upon water for their very existence and they have the most important interest in the determination of the State water rights. Congress in enacting the McCarran Amendment appears to have recognized the intense local concern in proceedings for the determination of State water rights and acted in respect thereto by allowing for a more effective and complete determination of water rights in the State courts. This Court is compelled toward the opinion that the intense local concern in actions of the present type weigh heavily in favor of the exercise of federal judicial restraint and nonintervention.

In light of considerations of federal judicial restraint in State matters and judicial administration, further giving regard to the conservation of judicial resources and the comprehensive disposition of litigation, this Court finds that those actions originally brought in the State Land Department of the State of Arizona and then removed to this Court from the State courts be remanded to the State courts for further proceedings. The Court further finds that those actions originally filed in this Court requesting declaratory and injunctive relief be dismissed without prejudice.

THEREFORE, IT IS ORDERED AS FOLLOWS:

Salt River Valley Water Users' Association v. White Mountain Apache Tribe (CIV 79–182); Salt River Valley Water Users' Association v. Gila River Indian Community (CIV 79–183); Salt River Valley Water Users' Association v. Salt River Pima Maricopa Indian Community (CIV 79–184) are hereby remanded to the State courts for all further proceedings.

Salt River Pima-Maricopa Indian Community v. The State of Arizona (CIV 79–185); San Carlos Apache Tribe of Indians v. State of Arizona (CIV 79–186); and Payson Community of Yavapai-Apache Indians v. The State of Arizona (CIV 79–187) are hereby dismissed without prejudice.

Fort McDowell Mohave-Apache Indian Community v. Salt River Valley Water Users' Association (CIV 79–267) is hereby

dismissed without prejudice. With regard to plaintiff's second cause of action, this Court is of the opinion that no action for damages can be entertained until the State has established the parties' rights to the water of the Verde River Watershed.