**UNITED STATES of America, Plaintiff,**

**and**

**The Klamath Tribe, Plaintiff–Intervenor,**

**v.**

**STATE OF OREGON WATER RESOURCES DEPARTMENT and William H. Young, its Director, Defendants.**

**Civ. No. 90–1329–FR.**

United States District Court,
D. Oregon.

Sept. 30, 1991.

Charles H. Turner, U.S. Atty., D. Or., Portland, Or., Gary B. Randall, Michael A. Gheleta, Peter Monson, John P. Lange, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., for plaintiff.

Carl Ullman, Water Adjudication Project, The Klamath Tribe, Chiloquin, Or., Melody McCoy, Walter Echo–Hawk, Native American Rights Fund, Boulder, Colo., for plaintiff-intervenor.

Dave Frohnmayer, Atty. Gen., Stephanie L. Striffler, Eric J. Bloch, Asst. Attys. Gen., Salem, Or., for defendants.

## OPINION

FRYE, District Judge:

The matters before the court are:

1) the motion for summary judgment of plaintiff, the United States of America (# 52);

2) the motion for summary judgment of plaintiff-intervenor, the Klamath Tribe (# 55); and

3) the motion for summary judgment of defendants, the Water Resources Department of the State of Oregon and William H. Young, its Director (# 54).

In its complaint, the United States seeks a judicial declaration that it has not waived its sovereign immunity under the McCarran Amendment, 43 U.S.C. § 666, so as to vest the State of Oregon with jurisdiction to compel the United States to appear and submit claims for rights to water in the Klamath Basin Adjudication being conducted by the Water Resources Department of the State of Oregon. The United States seeks a permanent injunction prohibiting the State of Oregon from proceeding against the rights of the United States to water in the Klamath Basin in the proceedings before the Water Resources Department of the State of Oregon, or from otherwise affecting the rights of the United States to water in the Klamath Basin in any manner whatsoever.

The United States also seeks a declaration that it has not waived its sovereign immunity under the McCarran Amendment so as to vest the State of Oregon with jurisdiction to compel the United States to file registration statements of claims of "federal reserved" and "vested" rights to water in the State of Oregon outside of the Klamath River Basin, and a permanent injunction prohibiting the State of Oregon from compelling the United States to file such registration statements or from otherwise affecting the rights of the United States to water in the State of Oregon through the requirement of filing "registration statements."

In its complaint in intervention, the Klamath Tribe (the Tribe) adopts the complaint of the United States and alleges two additional claims for relief: 1) to subject the water rights of the Tribe to quantification under the processes used by the State of Oregon is to deny the Tribe its right to an unbiased decision maker in violation of the Fifth and Fourteenth Amendments to the United States Constitution; and 2) to impose upon the Tribe the fees required by the State of Oregon in conjunction with the filing of claims for water rights is imper-

missible because federal law, including the Treaty of 1864 and federal common law, preempts the imposition of such fees on its federal rights.

## UNDISPUTED FACTS

Since February 24, 1909, the Water Resources Department of the State of Oregon has issued permits and certificates for uses of water in the Klamath Basin. In 1975, the State of Oregon initiated the Klamath Basin Adjudication by sending notices to approximately 30,000 potential claimants of water rights. A claimant of water rights who was notified of the Klamath Basin Adjudication was also notified that the claimant must participate in the adjudication of water rights or the State of Oregon would conclude that the claimant had abandoned its claim to water rights.

The Attorney General of the United States was served with notice of the Klamath Basin Adjudication on December 21, 1990. Approximately 220 claims to water rights have been submitted to the State of Oregon in the Klamath Basin Adjudication; 56 of the claims are the claims of allottees who are members of the Tribe, and the remaining 164 claims are non-federal and non-Indian claims.

The only claims that may be filed in the Klamath Basin Adjudication are those based on water usage initiated before February 24, 1909 and rights to water reserved by the federal government. The State of Oregon has threatened to treat the rights reserved by the federal government as forfeited if the United States fails to participate in the proceedings before the Water Resources Department of the State of Oregon in the Klamath Basin Adjudication. The Water Resources Department of the State of Oregon has in the past refused to file claims to water rights that were not accompanied by statutory filing fees. The Water Resources Department of the State of Oregon will refuse to accept claims filed by the federal government if these claims are not accompanied by the applicable filing fees.

The State of Oregon also seeks to compel the United States to file with the Water Resources Department of the State of Oregon "registration statements" of all "federal reserved" and "vested" claims to water throughout the State of Oregon except for the Klamath Basin.

■ A treaty between the government of the United States and the Tribe reserves to the Tribe certain water rights, including agricultural water rights and streamflow water rights. Streamflow water rights are nonconsumptive rights to an amount of water in streams to support the resources required for the fishing, hunting, trapping and gathering activities allowed to the Tribe by treaty with the United States.

The quantification of water rights in the Klamath Basin that has been initiated by the State of Oregon includes areas where the federal government has granted water rights to the Tribe. The Water Resources Department of the State of Oregon has served notice on the Tribe that the Tribe must file its claims to these federally-granted water rights with the State of Oregon or these claims will be deemed forfeited by the State of Oregon.

## CONTENTIONS OF THE PARTIES

The United States contends that it is entitled to summary judgment in its favor on all claims because:

1) the proceedings that the State of Oregon is employing to determine water rights are administrative and do not constitute a "suit" within the meaning of the McCarran Amendment; and

2) the Klamath Basin Adjudication being conducted by the State of Oregon is not "comprehensive" within the meaning of the McCarran Amendment because a) it does not include adjudication of water rights on other previously adjudicated tributaries of the Klamath River or afford the United States an opportunity to contest those previously adjudicated rights; b) it does not include post–1909 water rights and does not afford the United States an opportunity to contest those rights; and c) it does not include adjudication of rights to groundwater; and

3) the State of Oregon cannot compel the United States to file registration statements covering all of the water rights that the United States claims in the State of Oregon because a) the scheme of filing registration statements is not a "suit" within the meaning of the McCarran Amendment; b) the scheme of filing registration statements is not a "comprehensive general adjudication" within the meaning of the McCarran Amendment; and c) there is no authority for the State of Oregon to require the United States to file registration statements; and

4) the State of Oregon cannot compel the United States to pay filing fees to cover the costs incurred by the State of Oregon in registering and adjudicating claims to water rights because a) the United States has not waived sovereign immunity with respect to such a requirement; b) the filing fee requirement is barred by the supremacy clause of the United States Constitution; c) the filing fee requirement is barred by the property clause of the United States Constitution; and d) the filing fee requirement is barred by 28 U.S.C. § 2408.

The Tribe contends that it is entitled to summary judgment on each of its claims for the reasons stated by the United States and for the following additional reasons:

1) to require the Tribe to submit to the adjudication procedures of the State of Oregon regarding water rights would deprive the Tribe of its due process right to an impartial decision maker; and

2) the imposition of filing fees on the water rights of the Tribe, which rights were granted by treaty with the federal government, is preempted by federal law.

The State of Oregon contends that it is entitled to summary judgment in its favor on the claims of the United States and the Tribe because:

1) the stipulated consent decree entered in *United States v. Adair*, 478 F.Supp. 336 (D.Or.1979), bars the Tribe and the United States from obtaining a declaration that the process used by the State of Oregon to adjudicate the water rights of the United States and the Tribe does not meet the requirements of the McCarran Amendment for waiving the sovereign immunity of the United States; and

2) the procedure followed by the State of Oregon to adjudicate the water rights of the Tribe and the United States meets the requirements of the McCarran Amendment for waiving sovereign immunity of the United States because the Attorney General of the United States has been served with notice of the Klamath Basin Adjudication, and the Klamath Basin Adjudication is a "comprehensive" system that constitutes a "suit" for the purpose of determining water rights; and

3) the process of the State of Oregon in determining the water rights of the United States and the Tribe does not violate the due process clause of the fourteenth amendment because the water rights of the Tribe will not be adjudicated by decision makers who are biased; and

4) the United States and the Tribe are required to file the registration statements because the registration statements are part of the ultimate adjudication of water rights under the laws of the State of Oregon; and

5) the United States and the Tribe must pay the filing fees because the filing fees are not a "judgment for costs" so as to be prohibited by the McCarran Amendment and therefore are not preempted by other federal laws.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact

should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976).

## APPLICABLE LAW

### 1. *The McCarran Amendment*

43 U.S.C. § 666, the McCarran Amendment, provides, in part:

(a) Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

(b) Summons or other process in any such suit shall be served upon the Attorney General or his designated representative.

### 2. *The Determination of Water Rights in the State of Oregon*

██ Under the laws of the State of Oregon, the principle upon which claims of rights to water are based is the doctrine of prior appropriation, which prioritizes claims of rights to water according to a simple rule: first in time, first in right. Under the doctrine of prior appropriation, the first person to take control of an amount of water and put that water to a beneficial use has the legal right to use that amount of water for so long as the need continues.

In 1909, in recognition of the fact that public records were needed to authoritatively establish and administer claims of rights to water under the doctrine of prior appropriation, the Oregon legislature enacted a two-prong system for the establishment and administration of claims of rights to water. Under the two-prong system, water rights were created and/or established after 1909, the date of the enactment of the code, through an application/permit/certificate system administered by a state agency (currently the Water Resources Department), and water rights claimed and/or established before 1909 were adjudicated together by river system. *See generally* O.R.S. Ch. 536, 537, 539.

This system for the adjudication of rights to water was adopted to protect the rights of those whose claims to water were acquired before the enactment of a code, which were deemed vested rights but were not rights of record, and to permit the accurate forecasting of available water supplies. The system was designed to characterize the nature and the priority status of water rights obtained before 1909 so these rights could be integrated with the records that existed for water rights granted under the application/permit/certificate system implemented after 1909.

In order to adjudicate rights to water claimed before 1909, the State of Oregon selects an area that encompasses a stream or a tributary system. Within that area, all persons who claim rights to water prior to 1909 or who claim federally reserved rights to water [1] are notified of the adjudication and are required to file their claims to water rights. O.R.S. 539.021, 539.040. Any person or entity who receives notice of the adjudication and who fails to file his or its claim to water rights is subject to having those rights forfeited. O.R.S. 539.210.

---

**1.** In *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 207, 52 L.Ed. 340 (1908), the United States Supreme Court created the doctrine of federal reserved water rights. This doctrine holds that when land is set aside from the public domain, enough water is implicitly reserved with the land to satisfy the primary purpose for which it was set aside. *Id.*

In order to file a claim for the purpose of participating in a water rights adjudication, a claimant must provide the Water Resources Department of the State of Oregon with evidence regarding 1) when use of the claimed water rights began; 2) the location and purpose of the water use and source; and 3) the diversion point of the water rights claimed. O.R.S. 539.040. The Water Resources Department of the State of Oregon may thereafter ask the claimant to provide additional information. O.R.S. 539.070.

When the Water Resources Department of the State of Oregon receives evidence that it considers sufficient to demonstrate that a claimant has made a *prima facie* claim to water rights, the Water Resources Department of the State of Oregon sends out notice of a period of open inspection. O.R.S. 539.090. During the period of open inspection, all interested parties may inspect the claim to water rights that has been filed. *Id.* Following the period of open inspection, parties may contest the validity of the claim that has been filed. Challenges to a claim are resolved in a contested case hearing. The Director of the Water Resources Department of the State of Oregon incorporates the result of these contested case hearings, together with any uncontested claims that have been approved, in making an overall determination of the water rights within a system. O.R.S. 539.130.

The findings of fact, supporting evidence, and determination of the Director must be submitted to the Circuit Court of the State of Oregon for the county in which the system being adjudicated lies. O.R.S. 539.130(1). Any party to the adjudication may appear before the circuit court to establish its own claim or to attack the claims filed by others. All parties have the opportunity to object to the determination of the Water Resources Department of the State of Oregon and to present additional evidence to the court. O.R.S. 539.150(3). Following the appearances by interested parties, the circuit court issues a judgment affirming or modifying the determination of the Director of the Water Resources Department of the State of Oregon.

O.R.S. 539.150(4). The judgment order is appealable. O.R.S. 539.150(4).

After the circuit court issues its final decree, the Water Resources Department of the State of Oregon issues water rights certificates. These certificates have the same legal effect as the certificates issued by the Water Resources Department of the State of Oregon through the application/permit/certificate system established for claims to water rights that came into existence after 1909 and set forth in O.R.S. 537.250, 539.140. The holder of the certificate is then entitled to the benefits of state regulation in favor of the claimed water right. The water rights decreed as a result of the process of adjudication described above are combined with the record of rights decreed by the application/permit/certificate system to create an integrated record of all persons or entities who have water rights in a given system. O.R.S. 537.250, 539.200.

## ANALYSIS AND RULING

Neither the Ninth Circuit nor the United States Supreme Court has determined whether the procedures followed by the State of Oregon to adjudicate water rights meet the requirements set forth in the McCarran Amendment, thereby permitting a conclusion that the United States has waived its sovereign immunity and the State of Oregon has jurisdiction to compel the United States to participate in those proceedings. Therefore, this court must make that determination. In so doing, the court must strike a balance between the rule of statutory construction that the sovereign immunity of the United States is not waived by implication but must be unequivocally expressed, *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), and the policy underlying the McCarran Amendment, which was enacted "to deal with a general problem arising out of the limitations that federal sovereign immunity placed on the ability of the States to adjudicate water rights." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 564, 103 S.Ct. 3201, 3212, 77 L.Ed.2d 837 (1983).

1. *Does the stipulated consent decree entered in United States v. Adair preclude the United States from prevailing in this case?*

The State of Oregon contends that the consent decree entered in *United States v. Adair*, 478 F.Supp. 336 (D.Or.1979) (*Adair I*), precludes the United States and the Tribe from asserting that the United States has not waived its sovereign immunity with respect to the procedures used by the State of Oregon for determining water rights.

In *Adair I*, the United States sought an adjudication in federal court of its rights to water in the Williamson River, a tributary located within the Klamath Basin. The United States and the State of Oregon agreed upon the language in a stipulated declaratory judgment and a supplemental declaratory judgment, which provides: "Subject to the continuing jurisdiction of this Court, quantification of the rights to the use of the waters of the Williamson River and its tributaries within the litigation area will be performed by the State of Oregon within its applicable procedures." Exhibit 2 to Defendants' Memorandum in Support of Motions for Summary Judgment (Declaratory Judgment), pp. 3–4.

The State of Oregon contends that because the procedures used to adjudicate water rights have not changed since 1979 when the United States agreed to the consent decree in *Adair I*, the United States cannot now challenge the adequacy of those proceedings.

The United States contends that the supplemental declaratory judgment signed by the parties in *Adair I* contemplated that any adjudication by the State of Oregon of the rights of the federal government to water would have to meet the requirements of the McCarran Amendment. The United States contends that the consent decree in *Adair I* is not determinative of the issues in this case because 1) the Ninth Circuit in *United States v. Adair*, 723 F.2d 1394 (9th Cir.1983) (*Adair II*), declined to decide whether the procedure used by the State of Oregon to adjudicate water rights constituted a "suit" within the meaning of the McCarran Amendment, or whether the pro-

cedures used by the State of Oregon were sufficient to effect a waiver of the sovereign immunity of the United States under the McCarran Amendment, *Adair II*, 723 F.2d at 1405, n. 9; and 2) the federal officials who signed the consent decree in *Adair I* did not have the authority to waive the sovereign immunity of the United States and to consent to the exercise of jurisdiction by the State of Oregon over the United States.

 No official of the executive branch of the United States has the authority to waive the sovereign immunity of the United States and thus confer jurisdiction where none otherwise exists. *Stanley v. Schwalby*, 162 U.S. 255, 269–70, 16 S.Ct. 754, 760–61, 40 L.Ed. 960 (1896). Only Congress can consent to the waiver of the sovereign immunity of the United States. *Id.* The consent decrees signed by officials of the executive branch of government in the *Adair I* litigation cannot act as a waiver of the sovereign immunity of the United States. Therefore, those consent decrees do not bar the United States and the Tribe from raising a challenge to the procedures used by the State of Oregon under the McCarran Amendment.

2. *Does the procedure employed by the Water Resources Department of the State of Oregon constitute a "suit" within the meaning of the McCarran Amendment?*

 The McCarran Amendment provides, in part: "Consent is hereby given to join the United States as a defendant in any suit ... for the adjudication of rights to the use of water of a river system or other source." 43 U.S.C. § 666(a). The United States and the Tribe contend that the procedure used by the State of Oregon does not constitute a "suit" within the meaning of the McCarran Amendment. In support of this argument, the United States and the Tribe point to the consistent use of terms in the McCarran Amendment that are associated with court proceedings: "[s]ummons or other process," "party to such suit," and "court having jurisdiction." The United States and the Tribe contend

that because, under the laws of the State of Oregon, the notice of adjudication issues not from a court, but from the Water Resources Department of the State of Oregon, and because the first phase of the adjudicatory proceedings is conducted by the Director of the Water Resources Department of the State of Oregon, the entire process is not a "suit" within the meaning of the McCarran Amendment.

As outlined above, under the laws of the State of Oregon, the adjudication of water rights begins with a hearing before the Director of the Water Resources Department of the State of Oregon. Following this hearing, in which all interested parties may participate and submit evidence, the Director of the Water Resources Department of the State of Oregon makes proposed, written findings of fact and orders of determination regarding all of the water rights being adjudicated.

These proposed findings of fact and orders of determination as to water rights must be submitted to the Circuit Court of the State of Oregon for the county in which the river system whose water is being allocated is located. Upon receipt of the proposal of the Director of the Water Resources Department of the State of Oregon and the evidence upon which the proposal of the Director is based, the circuit court sets a hearing at which time it considers any exceptions filed to the adjudication. During the course of the hearing, the court may take additional evidence or order that additional evidence be gathered by the Director of the Water Resources Department of the State of Oregon or by a referee appointed for that purpose. It is only after the circuit court has conducted its hearing and reviewed the evidence submitted that it issues an order and a judgment affirming, modifying or denying the determination of the Director of the Water Resources Department of the State of Oregon. It is not until the judgment has been entered that the rights of the parties are fully adjudicated. A judgment entered by a circuit court judge is reviewable by the appellate courts of the State of Oregon.

The United States Supreme Court has reviewed the procedures followed by the Water Resources Department of the State of Oregon and the circuit courts in the process of adjudicating water rights in a case cited in the legislative history of the McCarran Amendment, *Pacific Live Stock Co. v. Lewis*, 241 U.S. 440, 451, 36 S.Ct. 637, 642, 60 L.Ed. 1084 (1915). The court summarized the procedures as follows:

> They are not independent or unrelated, but parts of a single statutory proceeding, the earlier stages of which are before the [water] board and the later stages before the court. In notifying claimants, taking statements of claim, receiving evidence, and making an advisory report, the board merely paves the way for an adjudication by the court of all the rights involved.... That the state, consistently with due process of law, may thus commit the preliminary proceedings to the board and the final hearing and adjudication to the court, is not debatable.

*Id.* at 451–52, 36 S.Ct. at 642.

Furthermore, the United States Supreme Court "has warned against overly technical application of the McCarran Amendment." *Adair II*, 723 F.2d at 1405, n. 9. This court finds that the fact that certain preliminary procedures are undertaken by the Water Resources Department of the State of Oregon, incident to the adjudication of water rights in a court of general jurisdiction, does not support a conclusion that the procedures of the State of Oregon for adjudicating water rights do not constitute a "suit" within the meaning of the McCarran Amendment.

3. *Is the Klamath Basin Adjudication a comprehensive, general adjudication within the meaning of the McCarran Amendment?*

■ The federal policy underlying the consent given by Congress to state jurisdiction provided for under the McCarran Amendment is the avoidance of piecemeal adjudication of water rights. *Colorado River Water Conservation Dist. v. United*

*States,* 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976).

The United States and the Tribe argue that the Klamath Basin Adjudication is not a comprehensive general adjudication within the meaning of the McCarran Amendment because 1) it does not include the adjudication of claims to previously adjudicated tributaries to the Klamath River or allow the United States to contest those claims; 2) it does not include claims to post–1909 water rights or allow the United States to contest those claims; and 3) it does not include an adjudication of groundwater rights.

The United States and the Tribe rely on *Dugan v. Rank,* 372 U.S. 609, 617–19, 83 S.Ct. 999, 1004–06, 10 L.Ed.2d 15 (1963), in support of their contention that the waiver of sovereign immunity provided by the McCarran Amendment applies only to cases involving a "general" adjudication of all of the rights of various owners on a given stream. However, the facts upon which *Dugan* was decided differ significantly from the facts presented to the court in this case. *Dugan* involves a suit to determine the water rights solely between certain private individuals and the United States and the local Reclamation Bureau. In holding that waiver of sovereign immunity provided in the McCarran Amendment does not apply to such a suit, the United States Supreme Court stated that the suit did not involve the general adjudication of water rights envisioned by the McCarran Amendment because not all of the claimants to water rights along the river were parties to the suit; no relief was either asked for or granted between the claimants; and the suit was not one which sought to establish priorities among claimants as to the appropriative and the prescriptive rights that they claimed.

The case before this court involves much more than a challenge by private individuals to the water rights claimed by the United States. The State of Oregon has taken steps to characterize and record the nature of the rights of all claimants to water along a river system and to establish the priorities and the appropriative and the prescriptive rights of these claimants. Thus, unlike the suit in *Dugan,* this case is the sort of general adjudication envisioned by the McCarran Amendment.

The United States and the Tribe next contend that the Klamath Basin Adjudication is not comprehensive as required by the McCarran Amendment because it does not require all holders of water rights in the Klamath Basin to participate in the adjudication.

Under the laws of the State of Oregon, each holder of water rights in previously adjudicated areas of the Klamath Basin, as well as holders of water rights by virtue of a permit issued after 1909, is denominated a party to the Klamath Basin Adjudication. The holders of these water rights do not need to participate in the Klamath Basin Adjudication unless they wish to contest the claims that are being adjudicated. There is no statutory provision conferring a right upon claimants in the Klamath Basin Adjudication to contest the water rights determinations which have previously been made in the Klamath Basin or to contest water rights existing under permits issued after 1909.

In two cases, the United States Supreme Court addresses the issue of comprehensiveness as required by the McCarran Amendment. In *United States v. District Court, Eagle County, Colo.,* 401 U.S. 520, 525, 91 S.Ct. 998, 1002, 28 L.Ed.2d 278 (1971), the United States argued that a supplemental adjudication of water rights wherein "only those who claim water rights acquired since the last adjudication of that water district are before the court" was not the comprehensive sort of adjudication required by the McCarran Amendment. The United States was a party to the supplemental adjudication, but had not been a party to the prior proceedings. As in this case, the United States argued that because it was not a party to the prior adjudications and could not contest the claims asserted in those adjudications, it could not be barred by the previous decrees, and since the owners of previously decreed rights were not before the court in the supplemental adjudication, the require-

ments for consent to suit of the McCarran Amendment were not met.

The court disagreed with the "extremely technical" and "narrow" interpretation of the McCarran Amendment proposed by the United States, and held that the proceedings were comprehensive enough to support a finding that the United States had consented to the suit. The court held that "[t]he absence of owners of previously decreed rights may present problems going to the merits, in case there develops a collision between them and any reserved rights of the United States. All such questions, including the volume and scope of particular reserved rights, are federal questions which, if preserved, can be reviewed here after final judgment by the Colorado court." *Eagle County*, 401 U.S. at 525–26, 91 S.Ct. at 1003.

In *United States v. District Court, Water Div. No. 5, Colo.*, 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971), the United States was served with notice of a proceeding in the Colorado state court for the adjudication of water rights in the drainage basins of the Colorado River System. As in this case, the United States argued that the state statutory procedure, which contemplated monthly meetings before a referee of the State of Colorado regarding application for water rights did not constitute general adjudications of water rights for purposes of the McCarran Amendment because all of the water users and all of the water rights in a stream system were not implicated in the determinations of the referee. The only water rights considered in the proceeding were those for which applications had been filed within a particular month.

The United States Supreme Court held that the statutory procedure reached all claims, "perhaps month by month but inclusively in the totality," and thus was comprehensive within the meaning of the McCarran Amendment. *Water Div. No. 5*, 401 U.S. at 529, 91 S.Ct. at 1004.

In both of these cases, the Supreme Court held that the fact that some rights on a river system are adjudicated before other rights was immaterial to a decision of whether a statutory scheme was sufficiently comprehensive to find a consent to suit under the McCarran Amendment. The system of adjudicating water rights used by the State of Oregon results in the ultimate adjudication of all claims and a characterization of the priority of those claims relative to one another, and is therefore comprehensive within the meaning of the McCarran Amendment. If the United States is dissatisfied with the outcome of this adjudication, it has resort to the appellate courts of the State of Oregon and the United States Supreme Court if its objections are properly preserved. *Eagle County*, 401 U.S. at 526, 91 S.Ct. at 1003.

Finally, the United States and the Tribe argue that because the adjudicative procedures of the State of Oregon do not call for simultaneous adjudication of rights to surface water and rights to groundwater within a given river system, the adjudication is not comprehensive within the meaning of the McCarran Amendment. The language of the McCarran Amendment does not support this construction, and the United States and the Tribe point to no provision in the legislative history and no case precedent, state or federal, in support of this construction of the McCarran Amendment.

4. *Does requiring the Tribe to submit to the adjudication procedures of the State of Oregon violate its due process right to an impartial decision maker?*

The Tribe contends that the role played by the Water Resources Department and the Department of Justice of the State of Oregon in the adjudication of water rights violates the right of the Tribe to due process of law by denying it an impartial decision maker. The Tribe recounts the need for federal protection of tribal rights from the existence of state-tribal tensions, *see Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. at 571, 103 S.Ct. at 3215, and points to litigation in the State of Oregon concerning the existence of tribal hunting and fishing rights.

The Tribe argues that agents of the Department of Justice of the State of Oregon

who have opposed the position of the Tribe in prior litigation involving tribal treaty rights are now in the position of adjudicating the Tribe's claims to water rights. The Tribe points out that a number of lawyers employed by the Department of Justice participated in briefing and advocating the position of the State of Oregon in earlier litigation in which the State of Oregon opposed certain rights to which the Tribe claimed entitlement. The Tribe contends that some of these lawyers are still active in the Department of Justice.

The Tribe contends that the statutory scheme of the State of Oregon, wherein the Department of Justice, at the direction of the Attorney General, who is an elected official, provides legal advice to the Director of the Water Resources Department, who is a political appointee of the Governor, who will quantify the water rights of the Tribe and submit findings and recommendations to a court, violates its right to have an impartial decision maker adjudicate its claims to water rights.

"[A] 'fair trial in a fair tribunal is a basic requirement of due process.'" *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), *quoting In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This tenet applies to administrative agencies which adjudicate, as well as to courts. *Id.* Not only is a biased decision maker constitutionally unacceptable, but our system of law has always endeavored to prevent even the probability of unfairness. *Id.*

Certain situations exist in which experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable. *Id.* Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. *Id.* This case presents neither of these situations.

■ Absent the presence of a personal or financial stake in the outcome of the proceedings by the adjudicator, the test for determining a probability of unfairness has been articulated as one in which:

1) the presumption of honesty and integrity among administrative adjudicators is balanced against a realistic appraisal of psychological tendencies and human weaknesses where administrators have made prior judgments or commitment such that they would be so psychologically wedded to their previous positions that they would consciously or unconsciously avoid the appearance of having erred or changed position. *Withrow v. Larkin*, 421 U.S. at 55, 95 S.Ct. at 1468; and

2) whether "a disinterested observer may conclude that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Cinderella Career and Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 591 (D.C.Cir.1970). Furthermore, to find a violation of procedural due process, it is the decision maker who must be biased; it is not sufficient to allege that other state officials not serving as the adjudicator may be biased. *Hammond v. Baldwin*, 866 F.2d 172 (6th Cir.1989).

■ The individuals who represented the interests of the State of Oregon in earlier litigation were advocates who took a legal position on the laws they were charged with enforcing and applying. The Tribe has failed to produce any evidence in support of its contention that an official who adjudicates its claims to water rights has prejudged the facts as well as the law of that particular case, or failed to produce evidence sufficient for the court to find that any one of these officials would be so psychologically wedded to their previous positions that they would consciously or unconsciously avoid the appearance of having erred or changed positions.

5. *Can the State of Oregon compel the United States to file registration statements of all, except for the Klamath Basin, of the water rights that the United States claims in the State of Oregon?*

■ Under O.R.S. 539.240(1), the State of Oregon seeks to compel the United

States to file with the Water Resources Department of the State of Oregon, on or before December 31, 1992, registration statements for all claims of the federal government to water pursuant to reserved rights or vested rights throughout the State of Oregon except for the Klamath Basin. The State of Oregon argues that this registration filing requirement is part of the adjudication process and also an administration of water rights under the McCarran Amendment.

The McCarran Amendment only waives the sovereign immunity of the United States from suit in a comprehensive adjudication of water rights. The registration statements required under O.R.S. 539.-240(1) predate the inception of the adjudication process and create only "a written record of claims which might not actually be validated for years." Defendants' Memorandum in Support of Motion for Summary Judgment, p. 38. There is no suit under way in the State of Oregon to adjudicate the water rights of the United States outside of the Klamath Basin, and therefore the registration statements required under O.R.S. 539.240(1) cannot be justified under the McCarran Amendment.

The sovereign immunity of the United States is not waived by implication. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. at 1351. The McCarran Amendment cannot be read as a waiver of sovereign immunity for the administration of unadjudicated water rights. *South Delta Water Agency v. United States Dep't of Interior*, 767 F.2d 531, 541 (9th Cir.1985). The McCarran Amendment does not waive the sovereign immunity of the United States so as to allow the State of Oregon to require the United States to file registration statements for unadjudicated claims or forfeit those claims.

6. *Is the United States required to comply with the law of the State of Oregon which requires the payment of filing fees in conjunction with the adjudication of water rights?*

■ Pursuant to O.R.S. 539.081, the State of Oregon charges fees to those indi-viduals claiming water rights in connection with the adjudication of those rights. O.R.S. 539.081(4) provides:

All fees paid under this section shall be deposited into the General Fund of the State Treasury and credited to an account of the Water Resources Department. The fees shall be used to pay for the expenses of the department to:

(a) Register claims to undetermined vested rights or federal reserved rights under ORS 539.230 and 539.240; and

(b) Determine claims registered under ORS 539.230 and 539.240.

The United States contends that under the McCarran Amendment, it is not required to pay these filing fees.

The McCarran Amendment provides, in part: "The United States, when a party to any such suit [a water rights adjudication], shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty." 43 U.S.C. § 666(a). The McCarran Amendment also provides that no judgment for costs is to be entered against the United States in a suit to adjudicate water rights. *Id.*

Federal law specifies that a judgment for costs is taxed against the losing party and is "limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation." 28 U.S.C. § 2412(a). The filing fees set forth in O.R.S. 539.081 do not fall within this definition because they are required even where there is no prevailing party, ie., even where a claim goes unchallenged.

The Colorado Supreme Court considered this issue in *United States v. City and County of Denver*, 656 P.2d 1 (Colo.1982), and ruled that the prohibition of the McCarran Amendment against judgments for costs did not excuse the United States from paying a filing fee. This decision was cited and followed by the District Court of the Fifth Judicial District of the State of Idaho, which reasoned: "Nine years has passed since the Colorado Supreme Court ruled against the United States on this issue and Congress has yet to express a

different intent. If Congress intended a broader exemption, it would, could, and still can, amend the McCarran Amendment and exempt the United States from paying filing fees." *Idaho v. United States,* Case No. 39576, Exhibit 2 to Defendants' Memorandum in Response to Plaintiff's Motions for Summary Judgment (Memorandum Decision), p. 13.

The plain language of the McCarran Amendment is that when the United States is party to a suit for the adjudication of water rights, the United States shall be deemed to have waived any right to plead that the state laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty. The filing fees required by O.R.S. 539.081 are not judgments for costs. Therefore, the United States is bound to pay the filing fees associated with the adjudication of its water rights.

7. *Is the Tribe required to comply with the law of the State of Oregon which requires the payment of filing fees in conjunction with the adjudication of water rights?*

■ The State of Oregon has exempted from the fee requirements of O.R.S. 539.-081 claims by any federally recognized Indian tribe and the United States, acting as trustee for such a tribe. O.R.S. 539.081(2). However, this exemption applies only to federal or tribal claims for vested rights to the use of surface water for any nonconsumptive and nondiverted instream use to satisfy tribal hunting, fishing or gathering rights. The Tribe has claims that do not fall within the exemption, including claims for consumptive and diversionary uses, such as agriculture. *Adair II,* 723 F.2d at 1410.

■ The State of Oregon contends that it derives authority to charge a filing fee from the Tribe from the McCarran Amendment. However, the McCarran Amendment neither implicitly nor explicitly refers to tribal rights. While the power to abrogate treaty rights exists, the intention to abrogate or modify them is not to be lightly imputed to Congress. *Menominee Tribe of Indians v. United States,* 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968).

The United States Supreme Court considered a set of facts analogous to those presented by this case in *Tulee v. Washington,* 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 (1942). In *Tulee,* an Indian challenged the imposition of a state license fee for fishing on the grounds that the fee was repugnant to a right reserved to him by treaty to take fish. The Supreme Court ruled in favor of the Indian, finding that the license fee, which was ostensibly regulatory but also revenue generating, acted "upon the Indians as a charge for exercising the very right their ancestors intended to reserve." *Id.* at 685, 62 S.Ct. at 865.

In the Treaty of 1864, the Tribe reserved to itself certain subsistence rights, including the right to fish, hunt and gather, and agreed to begin a way of life more dependent on agriculture. Pursuant to the Treaty, the Tribe reserved sufficient water for all of these purposes. *Adair II,* 723 F.2d at 1410. Under the reasoning of the United States Supreme Court in *Tulee,* to require the Tribe to pay filing fees would be to charge it for exercising rights which it reserved unto itself, and would therefore violate the Treaty of 1864 and federal law. The Tribe cannot be compelled to pay filing fees in conjunction with the adjudication of its water rights.

CONCLUSION

The motion for summary judgment of the United States (# 52) is granted as to its fourth claim for relief (registration statements) and is otherwise denied.

The motion for summary judgment of the Tribe (# 55) is granted as to its second claim for relief (preemption of state imposition of fees on treaty rights) and is otherwise denied.

The motion for summary judgment of defendants (# 54) is denied as to the fourth claim for relief of the United States and the second claim for relief of the Tribe and is otherwise granted.