Filed 2/23/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| JAY DOW, as Trustee, etc., | C091965 |
| Plaintiff and Respondent, | (Super. Ct. No. 4573) |
| v. | OPINION ON MOTION TO DISMISS |
| LASSEN IRRIGATION COMPANY et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Lassen County, Leonard J. LaCasse, Judge.  (Retired Judge of the Mendocino Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Kronick, Moskovitz, Tiedemann & Girard, Scott A. Morris and William T. Chisum, for Defendant and Appellant, Lassen Irrigation Company.

Best & Krieger, Gene Tanaka, Steve M. Anderson, and Emily S. Chaidez, for Defendant and Appellant, Honey Lake Valley Resource Conservation District.

Brownstein Hyatt Farber Schreck and Bradley J. Herrema, for Plaintiff and Respondent.

The right to appeal is purely statutory, since neither the federal Constitution nor state Constitution provides for it.  (*People v. Berkowitz* (1995) 34 Cal.App.4th 671, 676.)  In civil cases, the right to appeal is governed by Code of Civil Procedure section 902.  That statute provides "[a]ny party aggrieved may appeal."  (Code Civ. Proc., § 902.)  The question presented is whether a watermaster appointed by the trial court to implement and administer a water rights decree has the right to appeal the trial court's orders interpreting the decree on the

1

grounds the watermaster disagrees with the trial court's interpretation and the orders would increase the watermaster's administrative burdens and costs. We conclude the watermaster does not have the right to appeal because the watermaster is not aggrieved by the trial court's interpretation of the water users' rights under the decree.

The watermaster's sole interest in the decree is to serve as an arm of the court in administering and implementing the terms of the decree in return for compensation. The watermaster has identified no injury to *its rights or interests* arising from the trial court's orders interpreting the decree. As explained *post*, any increase in the watermaster's administrative costs associated with the trial court's orders are not borne by the watermaster but are instead borne by the water users subject to the decree.

We accordingly grant the motion filed by Jay Dow, as trustee for the Dow-Bonomini 2013 Family Trust (trust), to dismiss the appeal filed by watermaster Honey Lake Valley Resource Conservation District[1] challenging the trial court's orders interpreting paragraphs 17 and 55 of the 1940 Susan River Water Right Decree (decree) and directing the watermaster to implement and administer the decree in accordance with the interpretation (collectively the interpretive orders). The merits of Lassen Irrigation Company's (Irrigation Company) appeal will be considered in a separate opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The trial court entered the decree in 1940. (*Fleming v. Bennett* (1941) 18 Cal.2d 518, 520.) The trial court also entered a supplemental order providing for watermaster supervision in accordance with the provisions of the decree. (*Ibid*.) The decree and supplemental order were upheld by our Supreme Court in 1941. (*Id*. at p. 530.)

In 2007, the trial court appointed Honey Lake Valley Resource Conservation District as the watermaster to replace the California Department of Water Resources, effective January 1, 2008 (appointment order). The appointment order provides the watermaster is "vested with all

---

[1] All further references to the watermaster are to Honey Lake Valley Resource Conservation District unless otherwise specified.

2

authorities granted by Part 4 of Division 2 of the Water Code, section 4000 *et seq.*, with the exception of sections 4025-4026, 4050, subdivision (a), 4051, 4279 and 4351-4358." The watermaster may contract with or employ "one or more persons or firms to assist with the watermaster functions and to serve as deputy watermaster(s)." The appointment order further provides the watermaster shall "before June 15 of each year, adopt a proposed budget showing the amount of money estimated to be necessary to pay the costs of administration of the Susan River Watermaster Service Area and the distribution of water therein for the ensuing fiscal year, and shall propose an apportionment of the budgeted amount of money among the water right holders within the Susan River Watermaster Service Area."

The watermaster employs a deputy watermaster.[2] In 2019, the trust, a party and successor in interest to parties allocated water rights in the decree, submitted two requests to the deputy watermaster.

First, the trust asked the deputy watermaster to administer the decree in a manner allowing the trust to divert 25 cubic feet per second (cfs) until June 30, 2019, under water rights purportedly granted to the trust's predecessors in interest in a 1931 judgment in *Barham v. Cannon*, Lassen County Superior Court Case No. 3037 (3037 Judgment). The trust relied on paragraph 55 of the decree, which provides: "This judgment and decree shall supersede all former judgments and decrees as to the water rights involved, except the decrees of the above entitled Court in the cases of [the 3037 Judgment] and Frank Buffum, et ux. vs. Lasson [*sic*] Irrigation Company." The trust argued paragraph 55 expressly states the decree did not supersede the water rights granted to its predecessors in interest under the 3037 Judgment.

Second, the trust requested to divert water under some of its decreed water rights at its properties downstream from the points of diversion identified in the decree. The trust argued it had the right to do so under paragraph 17 of the decree, which provides: "Nothing herein contained shall, or shall be construed to, prevent any of the parties hereto, who have a joint

---

[2] All further references to deputy watermaster are to the watermaster's deputy watermaster unless otherwise specified.

3

ditch, where there is a continuous flow allotment to said ditch, from employing by agreement of such joint users of said ditch a system of rotation in use as among themselves, *or from preventing any party hereto, who has allotments to two or more ditches, from using all or any portion of his allotments through each or any number of his ditches on all or any portion of his land, so long as the maximum quantity of water diverted shall not exceed the aggregate of all allotments to all of his ditches*."  (Italics added.)

The deputy watermaster denied both requests, reasoning the point of diversion change would injure and interfere with other water users' rights, and "there is not enough material to support that the 3037 [Judgment] are stand alone water rights" separate from the water rights adjudicated and identified in the decree.

The trust filed two appeals with the watermaster advisory committee, challenging the deputy watermaster's decisions.  After the watermaster advisory committee denied the appeals, the trust appealed to the watermaster board.  The watermaster board also upheld the deputy watermaster's decisions.  The trust then sought relief in the trial court.  The watermaster and the Irrigation Company, a party allocated water rights in the decree, opposed the trust's motion for relief.

The trial court agreed with the trust's interpretation of paragraphs 17 and 55 of the decree and directed the trust to prepare the proposed orders.  The trust submitted the proposed orders to the trial court, and the watermaster and the Irrigation Company filed their respective objections thereto.  The trial court denied the objections and filed the orders as prepared by the trust.

The first order states paragraph 17 of the decree is interpreted to allow the trust to "divert its Schedule 4 and Schedule 5 Priority 2 allotments through each or any number of its ditches on all or any portion of its lands, so long as the maximum quantity of water diverted shall not exceed the aggregate of all allotments to all of its ditches."  The trial court additionally found the trust's "requested change would not result in any negative impact or injury to any other water user in the Susan River system, and is permitted under Water Code section 1706."  The trial court directed the watermaster to vacate its decision "and to take all

4

steps necessary to allow [the trust] to divert its Schedule 4 and Schedule 5 Priority 2 water rights at its ditches on all or any portion of its lands."

The second order states paragraph 55 of the decree is interpreted to expressly recognize that "the 3037 Judgment established water rights," and to exempt such water rights from being superseded by the decree. The trial court directed the watermaster to vacate its decision "and to take all steps necessary to administer the Decree in a manner that does not interfere with [the trust's] ability to exercise the water rights involved in the 3037 Judgment in future irrigation seasons."

The watermaster and the Irrigation Company appealed the trial court's orders. In its opening brief, the watermaster asserts: (1) the trial court "erred in giving [the trust] a second set of super-priority water rights pursuant to paragraph 55 of the decree"; (2) the trial court "misinterpreted the narrow scope of paragraph 17 in view of the overall structure and purposes of the decree"; and (3) the trial court's orders "create significant injury to other Susan River diverters and render watermaster administration of the decree virtually impossible." (Capitalization omitted.)

As to the last argument, in addition to discussing the extent of the alleged damage to other water users flowing from the trial court's interpretive orders, the watermaster asserts "the 3037 Judgment Order is so vaguely written that it fails to answer a host of questions that fundamentally impact administration of the [d]ecree," such as whether, in times of shortage, the water rights under the 3037 Judgment should "be prorated along with the other rights described in the [d]ecree, or whether they are to be satisfied at 100% regardless of the amount of water available for diversion." The watermaster believes "[i]f the latter, in times of drought, [the trust] could claim [it] is entitled to divert all of [its] rights before any other in the system could divert any water at all . . . thus undermining the schedules and priorities for many other diverters in the watershed." The watermaster further asserts that "[p]lacing the 3037 Judgment Order and its purported award of 740 [acre-feet] of unregulated water rights outside the Watermaster's oversight would also create fundamental instability in the system" and lead to future disputes. Finally, the watermaster argues the orders "would also fundamentally alter the

time, money, and resources expended by the Watermaster (and its current staff of only two employees) in terms of budgets, staffing, structure, investigations, on-the-ground diversion and adjustment review, system and equipment." Such changes, it asserts, "would increase Watermaster costs tremendously and lead to questions about which diverters would or could be required to pay these additional costs to accommodate implementation of [the trust's] rogue claimed rights."

The trust filed a motion to dismiss the watermaster's appeal; the watermaster and the Irrigation Company opposed the motion. The trust further filed a request for oral argument and a motion to strike the declaration of Carrie Adams in support of the watermaster's opposition to the motion to dismiss. We deferred the ruling on the motion to dismiss and motion to strike pending calendaring and assignment of the panel but denied the request for oral argument. We now consider the deferred motions; the merits of the Irrigation Company's appeal will be considered in a separate opinion.

## DISCUSSION

"An appeal may be taken only by a party who has standing to appeal. [Citation.] This rule is jurisdictional. [Citation.] Only a party who is aggrieved has standing to appeal." (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) Thus, to have standing to appeal an order, the appellant "must be a party of record and aggrieved by the challenged . . . order." (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 71.) "One is considered 'aggrieved' whose rights or interests are injuriously affected by the [order]. [Citations.] [Such] interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the [order]." ' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.)

The trust asserts the watermaster "is not an aggrieved party" because: (1) the watermaster is not a party to the litigation and is instead a servant of the court without authority to appeal the trial court's orders; (2) the watermaster is not aggrieved since "[i]t has no interests of its own in the matter -- its sole interest in the matter is to follow the instructions of the Superior Court"; (3) the watermaster, deemed a judge pursuant to the Code of Judicial

6

Ethics, cannot assert the rights of others; and (4) "the watermaster's argument is disingenuous" (bolding, underlining, and capitalization omitted).

The watermaster disagrees. The watermaster believes it has the right to appeal the trial court's orders because: (1) it was a party of record in the trial court, it formally opposed the trust's motion, and it "objected to the orders entered against [it] that are the subject of this appeal"; (2) it is aggrieved by the orders because it "will be forced to incur substantial costs and devote substantial resources to implementation if the erroneous orders are not overturned"; (3) the trust's "case law is inapposite and/or supports standing" (capitalization omitted); and (4) the trust's " 'special master' and 'judge' arguments should be rejected" (capitalization omitted). The watermaster further asserts "this is one of those rare instances where this Court should, *sua sponte*, issue sanctions against [the trust] as its motion is a transparent attempt to deny due process to, and to bleed limited resources from, a small public entity."

The Irrigation Company asserts the watermaster has the right to appeal because it "is a party of record to these proceedings" and aggrieved by the "pecuniary and non-pecuniary impacts its [*sic*] faces based upon the trial court's March 20 orders" and the "potential liability in general [it faces] as to its water allocation decisions." It further asserts the watermaster has standing on appeal even if it is a judicial body because the orders "have a direct impact on [the watermaster's] budget, finances, and internal operations." The Irrigation Company believes the issue as to the watermaster's right to appeal "should be deferred until consideration and resolution of the underlying appeal." (Capitalization omitted.)

At the outset, we emphasize the question before us is a narrow one -- i.e., whether the watermaster has *the right to appeal* the trial court's interpretive orders relating to the scope and use of a water user's rights under the decree because the watermaster disagrees with the trial court's interpretation and argues the interpretive orders will increase its administrative burdens

7

and costs.[3]  The parties cite no cases, nor are we aware of any, addressing the unique circumstances presented in this appeal.  We conclude, given the watermaster's role in administering the decree and the arguments it raised on appeal, the watermaster is not aggrieved by the interpretive orders.  It thus has no right to appeal those orders under Code of Civil Procedure section 902.[4]

The watermaster's interest in the decree is in administering and implementing the terms thereof -- i.e., distributing water in accordance with the rights, priorities, acreages, flow rate, and other provisions of the decree -- in return for compensation.  In its appointed capacity, the watermaster serves "as an arm of the court" in an impartial and unbiased role.  (*Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1072.)  The watermaster's role is merely to administer and implement the decree; its role is not to champion the rights of some water users subject to the decree to the detriment of other water users subject to the decree.  In other words, the watermaster's role is not to take sides or play favorites.  (See *id*. at p. 1073 [analogizing the watermaster's role to that of a judge who should "avoid either an actual conflict of interest or the appearance of a conflict of interest"].)  Accordingly, when a water user did not find it in his, her, its, or their interest to champion a cause potentially adverse to his, her, its, or their rights by seeking judicial review, it is not the watermaster's role to do so.  "The ultimate authority to control and exercise the water rights belongs to the owners, not the water master."  (*Orange Cove Irrigation Dist. v. Los Molinos Mutual Water Co.* (2018) 30 Cal.App.5th 1, 14.)  Any alleged injury to the rights of other water users under the decree resulting from the interpretive orders is thus not a basis for finding the watermaster aggrieved.

---

[3]    In its opposition to the motion to dismiss, the watermaster complains the interpretive orders mandate vague and undefined steps.  As we explain *post*, the watermaster has forfeited any such challenge to the trial court's orders by failing to raise the argument with reasoned analysis.

[4]    The parties cite no other statutory basis for finding the watermaster has the right to appeal the trial court's interpretive orders, and we are aware of none.

Where, as here, the watermaster continues to be compensated for any increases in the administrative costs and burdens associated with the trial court's interpretation of the decree, its rights and interest are unaffected, and no injury arises.[5] The increased costs associated with complying with the interpretive orders, as argued by the watermaster, if presumed to be true, would not be borne by the watermaster but would instead be borne by the water users subject to the decree. Indeed, the appointment order provides the watermaster's budget shall be apportioned among and between the water right holders within the Susan River Watermaster Service Area, and the watermaster shall propose how to apportion its proposed budget. The appointment order further provides the watermaster is "vested with all authorities granted by Part 4 of Division 2 of the Water Code, section 4000 *et seq.*, with the exception of sections 4025-4026, 4050, subdivision (a), 4051, 4279 and 4351-4358." Consistent with the appointment order, Water Code section 4201 states: "All of the cost of administration of a service area and the distribution of water therein shall be paid by the owners of the rights to divert and store water within the service area as provided in this chapter."

In sum, any increase in the watermaster's administrative burdens and costs flowing from the trial court's interpretation of the decree affects the water users' pecuniary interests, not the watermaster's interest in administering and implementing the decree. We thus find *Serrano* and *County of Riverside*, upon which the watermaster relies, to be readily distinguishable and inapplicable under the circumstances presented here. (Citing *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1026-1027 [the appellants were aggrieved because the trial court ordered them, not their counsel, to pay fees charged for copies of deposition transcripts]; *County of Riverside v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 20, 27 [Public Employment Relations Board was aggrieved by the

---

[5] We note the watermaster does not argue it *cannot* implement the trial court's interpretive orders. It merely argues that to do so would be onerous, require additional resources, and cost substantially more in administrative costs.

9

"orders, writ, and judgment effectively nullify[ing] [its] decision regarding the application of the [Meyers-Milias-Brown] Act and requir[ing] [it] to pay a significant attorney fees award"].)

We also find *Aries Development Company* inapplicable. (*Aries Dev. Co. v. California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534.) In that case the California Coastal Zone Conservation Commission (commission) appealed from a judgment granting a development company a peremptory writ of mandate commanding the commission to enter a decision recognizing the development company's claim of exemption from the permit requirements of the California Coastal Zone Conservation Act of 1972. (*Aries Dev. Co.*, at pp. 537-538.) The commission, an administrative agency, did not appeal in the capacity as an arm of the court subject to an appointment order. The case also does not inform our analysis on the right to appeal issue because the court did not analyze the commission's right to appeal.

To the extent the watermaster believes it cannot implement the decree as interpreted, the watermaster's remedy is to seek relief from the appointment order, *not* to challenge the trial court's interpretation of the decree as to the water user's rights. The trial court's directives to the Honey Lake Valley Resource Conservation District in the interpretive orders are to the district in *its capacity as the watermaster*. If Honey Lake Valley Resource Conservation District can no longer perform the watermaster services under the decree, it may be relieved of its position as watermaster, and the interpretive orders would impose no further burdens or obligations on the district. It would be up to the water users subject to the decree to seek redress if the interpretive orders lead to absurd results in the administration and implementation of their water rights. The current watermaster's administrative burdens are not, however, a factor to be considered in interpreting the decree. (See *Dow v. Lassen Irrigation Co.* (2013) 216 Cal.App.4th 766, 780-781 [interpretation of a decree turns on the meaning of the words and phrases in the document construed as a whole].)

We find no merit in the watermaster's argument that it is aggrieved because "under California law, an 'aggrieved party includes a party against whom an appealable order or judgment has been entered.' " (Quoting *County of Riverside v. Public Employment Relations Bd.*, *supra*, 246 Cal.App.4th at p. 27.) The quote pertains to the "party" requirement in Code

10

of Civil Procedure section 902, not the "aggrieved" requirement of the statute. As the *County of Riverside* court explained in the sentence *preceding* the quote relied upon, " '[a]n aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision.' " (*County of Riverside*, at p. 27.) A party is not aggrieved simply because an appealable order or judgment has been entered against it.

The watermaster's conclusory argument that it is aggrieved because the trial court's orders mandate vague and undefined steps also need not detain us long. The watermaster fails to explain the reasoning by which it reaches the conclusion it asks us to adopt, which is fatal to its argument. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) Indeed, while the watermaster discusses the complications with implementing the orders, such as "engineering, operations and financial changes and actions to the watershed" and the substantial costs purportedly associated with implementing such changes, it does not articulate how it must guess as to the meaning of the orders or explain how people of common intelligence may differ as to the orders' interpretation and application, i.e., arguments pertaining to vagueness.

To the extent the watermaster attempts to rely on its vagueness arguments in its opening brief, we are not persuaded. The watermaster merely asserts the trial court's order addressing paragraph 55 of the decree "is so vaguely written that it fails to answer a host of questions that fundamentally impact administration of the [d]ecree," such as how the water rights in the 3037 Judgment would be administered "in times of shortage" and if the trust claims it "is entitled to divert all of [its] rights before any other in the system could divert any water at all" in times of drought. We fail to see how the hypothetical "what if" scenarios posed by the watermaster render the watermaster aggrieved. First, such future disputes, if any, are appropriately directed to the watermaster as part of the watermaster's administrative functions; the watermaster is not aggrieved in that regard. Second, courts do not render advisory opinions on hypothetical future disputes. (See *Giles v. Horn* (2002) 100 Cal.App.4th 206, 226-227.) The trial court's order thus did not need to address the "what if" scenarios posed by the watermaster.

11

Further, to the extent the watermaster relies on the following rule or regulation it adopted pursuant to the appointment order to support its right to appeal, it is mistaken: "Watermaster shall reasonably defend the Judgment, these Rules and Regulation [*sic*] and any decision of the Watermaster made pursuant to these Rules and Regulations against challenges brought by any person who is not a party to the Judgment." The foregoing rule or regulation applies only to challenges brought by any person *who is not a party to the Judgment* (i.e., not a water user subject to the decree) and, more importantly, the watermaster's rules and regulations cannot supplant jurisdictional standing requirements.

We briefly respond to two additional arguments raised by the Irrigation Company. First, the Irrigation Company asserts the watermaster has standing because the interpretive orders have the potential of requiring the watermaster to defend itself against a potential injunction under Water Code sections 4160 and 4161. The trial court's interpretation of the decree did not, however, alter the watermaster's potential liability in implementing and administering the decree, as provided in the Water Code. That risk remains unchanged and is a risk the watermaster assumed and accepted when it agreed to its appointment.

Second, the Irrigation Company argues the decision on the motion to dismiss "should be deferred until consideration and resolution of the underlying appeal." (Capitalization omitted.) We disagree; standing is jurisdictional. (*Sabi v. Sterling*, *supra*, 183 Cal.App.4th at p. 947.) We may consider the issue of standing at any time.

Finally, we need not resolve the parties' dispute as to whether the watermaster's role is akin to that of a judicial officer or court, or whether its role is instead akin to that of an administrative agency. Even if the watermaster's role were akin to that of a judicial officer or court, it would not have the right to appeal the interpretive orders. The general rule is that a court or judicial officer may not appeal a reviewing court's decision. As our Supreme Court explained: " 'In our common law judicial system we rely upon a separation of roles to bring about proper results. The courts' role is to decide cases; the parties' role is to bring cases before the courts. If a party is aggrieved by the ruling of a lower court, he is provided with an avenue of appeal to a higher tribunal by means of an orderly prescribed procedure, . . . [T]here

12

is no procedure authorized whereby a [judicial officer or court], disagreeing with a [reviewing] court's decision on review, may come to the next court in the hierarchy . . . and ask it to set the [reviewing] court straight.  A [judicial officer or court] may have reason to complain of the treatment of one of its decisions, or its procedures, at the hands of the reviewing court.  Nevertheless, the premise under which the judiciary operates is straightforward: if no individual party finds it worth his or her while to champion the cause and seek judicial review, then review will not occur.' " (*Municipal Court v. Superior Court (Gonzalez)* (1993) 5 Cal.4th 1126, 1131.)  This general rule is not, however, absolute.

An exception to the general rule is when a decision has a significant impact on a court's operating procedures or budget.  (*Ng v. Superior Court* (1997) 52 Cal.App.4th 1010, 1014, 1019-1020, disapproved of on other grounds in *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1068-1072.)  Relying on *Ng*, the Irrigation Company asserts, if the watermaster is akin to a judicial officer or court, the watermaster has a right to appeal because the interpretive orders "will have a direct impact on its budget, finances, and internal operations."  The Irrigation Company is mistaken.

Although the *Ng* court ultimately found the exception inapplicable, it explained "that when a court does not prevail in a writ proceeding brought by a litigant assailing the validity of one of the court's procedures, the court has been permitted to seek higher review of the adverse ruling, either by filing a notice of appeal (if the ruling was by the superior court) or by filing a petition for review in the Supreme Court (if the ruling was by the Court of Appeal)." (*James G. v. Superior Court* (2000) 80 Cal.App.4th 275, 280-281.)  In that regard, the *Ng* court relied on and analyzed the concurring and dissenting opinion of California Supreme Court Justice Joyce L. Kennard in *Gonzalez,* explaining "[e]ach of the cases cited by Justice Kennard deals with the situation where 'the significant effect of an issue is on the trial court's procedures *rather than on the litigation in which the issue arises . . . .*' " (*Ng v. Superior Court*, *supra*, 52 Cal.App.4th at pp. 1017-1018, italics added, quoting *Municipal Court v. Superior Court (Gonzalez)*, *supra*, 5 Cal.4th at pp. 1138-1139 (conc. and dis. opn. of Kennard, J.).)

We fail to see how the foregoing exception could pertain to the watermaster's appeal. At bottom, the watermaster is asking this court to adopt its, rather than the trial court's, interpretation of the decree, in part because implementing the trial court's interpretation is administratively burdensome. Neither *Ng* nor the authorities discussed therein suggest that, by analogy to this case, a trial court could appeal to our Supreme Court an appellate court's reversal of its interpretation of a decree, based on the trial court's disagreement with the appellate court's interpretation, by asserting the interpretation imposes an administrative burden on the trial court in implementing the decree, when the cost of implementing the decree would be borne by the persons subject to the decree. Plainly, the circumstances here are not akin to the circumstances in which the exception applies.

Because we agree with the trust that the watermaster is not aggrieved by the trial court's interpretive orders, we deny the watermaster's request for sanctions. We further need not and do not rule on the trust's objections to the declaration of Carrie Adams filed in support of the watermaster's opposition to the motion to dismiss because the declaration is irrelevant to our disposition.

## DISPOSITION

The trust's motion to dismiss the watermaster's appeal is granted. The watermaster's appeal is dismissed.

/s/
Robie J.

We concur:

/s/
Hull, Acting P. J.

/s/
Earl, J.

14